Shobna Chandar LATA, Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 98–70814.

United States Court of Appeals,
Ninth Circuit.

Submitted Dec. 10, 1999*

Decided March 8, 2000

* The panel unanimously finds this case suitable
for decision without oral argument. *See* Fed.
R.App. P. 34(a).

Neville Asherson, John C. Varga, Law Offices of Asherson & Klein, Beverly Hills, California, for the petitioner.

David W. Ogden, Karen Fletcher Torstenson, Donald A. Couvillon, United States Department of Justice, Washington, D.C., for the respondent.

Before: WIGGINS[**], O'SCANNLAIN, and HAWKINS, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must decide whether substantial evidence exists to support the Board of Immigration Appeals' adoption of an Immigration Judge's decision to deny an Indo–Fijian's petition for asylum.

I

Shobna Chandar Lata entered the United States on a six-month tourist visa on November 15, 1992. Upon arriving in this country, she filed an application for asylum with the Immigration and Naturalization Service ("INS"). In that application, she alleged that she suffered racial and religious persecution in Fiji. Specifically, she described one episode in which a group of Fijian youths pulled her aside while she was on her way home from school and asked her for money. She told them that she did not have any and ran from them; the youths then threw stones at her and chased her. Lata alleged that when she made it home, her parents reported the incident to the police, but the authorities took no action.

In the same application, Lata made other general complaints about ethnic Fijians throwing rocks at her house and stealing her family's tools from their yard. Lata was interviewed by the INS pursuant to her application and, without adding more, swore to its contents on December 29, 1992.

In a letter dated March 15, 1993, the INS made clear its intent to deny Lata's request for asylum. The INS offered Lata thirty days to rebut the letter, but she did not do so. On August 2, 1993, the INS denied her application and initiated deportation proceedings, ordering her to show cause why she should not be deported for overstaying her visa.

An Immigration Judge ("IJ") conducted Lata's evidentiary hearing on February 6, 1995, at which Lata was represented by counsel. At that hearing, Lata testified to a significantly modified version of the incident recounted in her initial asylum application. Lata asserted that in 1990, when she was coming home from school one day, she was attacked by two Fijian natives. She testified that one pulled her aside to a bush and began pulling his· pants down. She claims that she got scared and ran home. The men did not ask her for money or throw rocks at her, nor did they pursue her. Lata claimed that she reported the incident immediately at a police post—a tent manned by police officers—located two blocks from her house, but that these officers did nothing. Lata claimed that thereafter her father walked her to and from school. She saw her attackers three days later cutting grass, and again complained to the police to no avail.

Lata's explanation for the variance in her written asylum application and her oral testimony was that she was embarrassed to recount the assault, and that she feared the stigma that it might cause her. Lata testified that, as Hindus, ethnically Indian Fijian girls have arranged marriages but that they cannot marry if they have been raped. She claims that one of her female friends in Fiji was raped by Fijian natives. Her sister who continues to live in her hometown, however, has not encountered problems with native Fijians.

·In August 1991, Lata obtained a passport and, in May 1992, she left Fiji for the

[**] Judge Wiggins participated in the decision of the court but died before the decision was filed.

United States. She stated that the delay in her departure was due to her preparation for the trip and being denied a visa twice; she did not mention the incident in her visa applications.

The IJ declared that she had "some difficulties with the credibility of this respondent and is not sure whether this incident she described today, actually happened to her." *Decision of the Immigration Judge* at 8. Even were she to credit Lata's story as credible, however, the IJ stated that "it would still be difficult to find that this is an incident condoned by the government or one that the government has some control over, rather than a criminal incident." *Id.* Consequently, the IJ held that Lata failed to establish a well-founded fear of persecution, and that she had therefore necessarily failed to satisfy the heavier burden required for withholding of deportation.

In arriving at this decision, the IJ specifically pointed to the hundreds of thousands of ethnic Indians living in Fiji, including Lata's own brother and sister, largely without incident. More specifically, Lata herself remained unmolested in Fiji for many months after this incident, with her assailants fully aware of her whereabouts. "Therefore," the IJ concluded, "it would have to be assumed to have been an isolated incident." *Id.* at 9.

The Board of Immigration Appeals agreed. On July 9, 1998, the Board affirmed the IJ's denial, expressly adopting the IJ's decision.

## II

 Because the Board did not review the case de novo, we review the decision of the Immigration Judge. *See Garrovillas v. INS,* 156 F.3d 1010, 1013 (9th Cir.1998). We review the lower court decision that an alien has not established eligibility for asylum under the "substantial evidence" standard. *See Singh v. INS,* 134 F.3d 962, 966 (9th Cir.1998). Therefore, the IJ's determination that an alien is not eligible for asylum must be upheld if supported by reasonable, substantial, and

probative evidence in the record. *See INS v. Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). In other words, Lata must show "that the evidence [s]he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *Id.* at 483–84, 112 S.Ct. 812.

 In order to conclude that Lata does not qualify for asylum under 8 U.S.C. § 1158, the IJ must find that she failed to demonstrate a well-founded fear of persecution, on account of statutorily protected grounds, that is both subjectively genuine and objectively reasonable. *See Sanchez–Trujillo v. INS,* 801 F.2d 1571, 1579 (9th Cir.1986). Lata is not, however, required to show that an occurrence of the feared persecution is more likely than not. *See INS v. Cardoza–Fonseca,* 480 U.S. 421, 431, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) ("One can certainly have a well-founded fear of an event happening when there is less than a 50% chance of the occurrence taking place."). To reach the conclusion that Lata qualifies for withholding of deportation under 8 U.S.C. § 1253(h), the IJ must find that she has shown that there would be a "clear probability of persecution" if she were deported. *INS v. Stevic,* 467 U.S. 407, 430, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984). For this second form of relief, therefore, Lata bears a higher burden of proof, under which she must demonstrate that it would be "more likely than not" that the feared persecution would occur. *Id.* at 424, 104 S.Ct. 2489. Thus, should Lata fail to qualify for the discretionary relief of asylum, she would necessarily fail to qualify for the mandatory relief of withholding of deportation. *See Cardoza–Fonseca,* 480 U.S. at 440–41, 107 S.Ct. 1207.

## III

Our review of the record reveals extensive evidence to support the Immigration Judge's decision to deny Lata's petition. Even if we were to make the charitable assumption that her story is credible, we

cannot go further. The encounter of which she complains is nothing more than an isolated criminal incident that does not begin to resemble persecution.

We begin our analysis of the appeal by examining Lata's credibility. We review findings of adverse credibility under the same highly deferential substantial evidence standard applicable to the denial of asylum. *See Berroteran–Melendez v. INS,* 955 F.2d 1251, 1256 (9th Cir. 1992). The significant and relevant discrepancies between Lata's asylum application and her later testimony at the evidentiary hearing clearly support an adverse credibility finding. *See de Leon–Barrios v. INS,* 116 F.3d 391, 393 (9th Cir.1997). The two versions of the tale are very different from one another: the first involves a group of youths accosting Lata for money, throwing rocks at her as she fled them, and pursuing her; the second involves two men preparing to assault her sexually, and her fleeing without being chased or having rocks thrown at her.

The only explanation that Lata offers for the discrepancy in the testimony is the embarrassment she felt at revealing the sexual nature of the second version in front of her family. At the evidentiary hearing, Lata was able to testify outside the presence of her family members; presumably she could have filled out her asylum application privately also, or offered an explanation of why she could not. She was also interviewed by the INS pursuant to her written asylum application, which provided her with an opportunity to amend her written statement, again outside the presence of her family if she so wished. Even if we were to find Lata's explanation for the discrepancy in her two stories plausible, the IJ was clearly justified in questioning her credibility based on these two very different narratives. Lata's explanation can hardly be characterized as compelling the opposite result.

Second, and in any event, this incident, if it did occur, did so in 1990, but Lata did not leave Fiji until May 16, 1992. In that time, Lata was never again troubled by these or any other native Fijian youths. Moreover, her sister has lived without difficulty in the same town to this day. This isolated incident, therefore, cannot alone support a contention of persecution. *See Prasad v. INS,* 47 F.3d 336, 340 (9th Cir.1995). Lata's general claims of broader ethnic tension across Fijian society also do not establish statutory persecution. *See Singh v. INS,* 134 F.3d 962, 970–71 (9th Cir.1998).

## IV

We turn next to Lata's claim of ineffective assistance of counsel. Lata's argument on this claim is based upon her retention of the services of one Albert A. Villela, an immigration paralegal at the Fijian Community Association in Redwood City, California. Villela helped Lata compile her written application and secured attorneys to represent her in court. Upon the denial of her asylum appeal to the Board, Villela assisted Lata in preparing an in propria persona notice of appeal. He was unable to find her an attorney for that appeal, and briefing notices sent by the court to Lata went to the Fijian Community Association rather than to Lata since Villela had placed the Association's address on the application. He failed to forward those notices to her, and her appeal was accordingly dismissed for lack of prosecution. Nevertheless, Villela filed a declaration explaining the situation and the INS did not oppose reinstatement of her appeal. Her appeal is obviously now well underway and Lata is currently represented by perfectly able counsel. In fact, Lata has gained another year in America because of this representation.

Ignoring for a moment the serendipitous outcome of Lata's representation, we give our full attention to her claim of ineffective assistance of counsel. We first note that, because the assistance of which she complains occurred after the Board's review, this appeal is the first instance in which she has raised the claim. This is not, however, the first forum to which she

might have complained. Indeed, the Board has laid out a comprehensive procedure that a petitioner should follow to support such a claim, and our sister circuits have adopted its reasoning. *See Matter of Lozada,* 19 I. & N. Dec. 637, 639, 1988 WL 235454 (B.I.A.) *aff'd,* 857 F.2d 10 (1st Cir.1988); *see also Henry v. INS,* 8 F.3d 426, 439 (7th Cir.1993); *Esposito v. INS,* 987 F.2d 108, 110–12 (2d Cir.1993). We now do the same.

 In *Lozada,* the Board set forth three requirements for supporting a claim of ineffective assistance of counsel: (1) an affidavit by the alien setting forth the agreement with counsel regarding the alien's representation; (2) evidence that counsel was informed of the allegations and allowed to respond; and (3) an indication that a complaint has been lodged with the bar, or reasons explaining why not. *Id.* We have long held that a court of appeals is not the appropriate forum to raise questions in the first instance. *See, e.g., Rashtabadi v. INS,* 23 F.3d 1562, 1567 (9th Cir.1994); *Vargas v. U.S. Dep't of Immigration,* 831 F.2d 906, 907–08 (9th Cir.1987). We have similarly held that other avenues for remedies, if available, must be pursued before raising issues in this court. *See, e.g., Baria v. Reno,* 94 F.3d 1335, 1340 (9th Cir.1996) (holding that an alien must exhaust his administrative remedies before challenging the adequacy of the administrative record). Of course, Lata is raising her claims for the first time to this court and, as such, has not pursued other avenues of relief. Nevertheless, she has pursued none of the avenues outlined in *Lozada,* which were available to her. Regardless of her failure to comply with *Lozada,* though, Lata's claim is doomed because she cannot show any harm at the hands of her counsel.

 Turning to the prejudice in Lata's allegations, we now examine her Fifth Amendment right to due process in these proceedings. *See Magallanes-Damian v. INS,* 783 F.2d 931, 933 (9th Cir. 1986). To prevail on a due process challenge to deportation proceedings, Lata must show error and substantial prejudice. *See Getachew v. INS,* 25 F.3d 841, 845 (9th Cir.1994); *Vides–Vides v. INS,* 783 F.2d 1463, 1469 (9th Cir.1986). A showing of prejudice is essentially a demonstration that the alleged violation affected the outcome of the proceedings, *see Hernandez–Luis v. INS,* 869 F.2d 496, 498 (9th Cir. 1989); we will not simply presume prejudice. *See United States v. Leon–Leon,* 35 F.3d 1428, 1431 (9th Cir.1994). Lata cannot show a scintilla of prejudice. Indeed, the very fact that we are entertaining her appeal now is proof that her counsel's behavior did nothing to damage her case. If anything, she has benefitted from the events that transpired at the hands of her representation since she has enjoyed more time in this country.

## V

 Finally, we emphasize that Lata retains her right to voluntary departure. *See Contreras–Aragon v. INS,* 852 F.2d 1088, 1092 (9th Cir.1988) (en banc) (holding that in a timely petition for review, the period for voluntary departure begins to run on the date the mandate issues). This petition for review was filed in a timely fashion after Lata's appeal was reinstated, so she has not forfeited her voluntary departure.

## VI

For the foregoing reasons, we hold that substantial evidence exists to support the Board of Immigration Appeals' adoption of an Immigration Judge's decision to deny Lata's petition for asylum.

PETITION DENIED.