Cenon Escalona EVANGELISTA;
Marrylene E. Evangelista,
Petitioners,

v.

John ASHCROFT, Attorney
General, Respondent.

No. 02–71775.

Agency Nos. A75–253–654, A75–253–655.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 6, 2003.

Decided Nov. 21, 2003.

Bert M. Vega, Esq., Law office of Bert M. Vega, Vallejo, CA, for Petitioners.

Regional Counsel, Western Region Immigration & Naturalization Service, Laguna Niguel, CA, Ronald E. LeFevre, Chief Legal Officer, Office of the District Counsel Department of Homeland Security, San Francisco, CA, Blair T. O'Connor, Office of Immigration Litigation, Civil Division, Department of Justice, Washington, DC, for Respondent.

Before CANBY, W. FLETCHER, and TALLMAN, Circuit Judges.

## MEMORANDUM *

Petitioners, Cenon Escalona Evangelista and Marrylene Evangelista, natives and citizens of the Philippines, seek review of a summary decision of the Board of Immigration Appeals' ("BIA") affirming the Immigration Judge's ("IJ") denial of their application for asylum and withholding of removal.[1] We have jurisdiction pursuant to 8 U.S.C. § 1252.

The Evangelistas seek asylum because of their problems with the mayor of their Philippine home town, the Philippine police, and the New People's Army ("NPA"). According to Mr. Evangelista, his problems with the mayor started when the mayor asked him to operate an illegal gambling house from which he could keep 60% of the profits and the mayor would keep the other 40%. Mr. Evangelista acceded to the mayor's request because he thought the mayor would kill him if he refused. When Mr. Evangelista discovered that the mayor was using his portion of the illegal gambling proceeds for personal gain, he spoke out publicly against the mayor. The mayor became angry with Mr. Evangelista, threatened him, and allegedly had his bodyguards beat him. The NPA learned about Mr. Evangelista's problems with the mayor and offered to protect him in exchange for money; Mr. Evangelista declined the offer. Mr. Evangelista's problems increased when some police officers and NPA members were killed, and each group suspected Mr. Evangelista of giving information to the other group.

The IJ denied Petitioners' applications for asylum because she concluded that Mr. Evangelista was not credible.[2] We review credibility determinations under the substantial evidence standard. *See Lopez–Reyes v. INS*, 79 F.3d 908, 911 (9th Cir. 1996). The IJ's adverse credibility determination can be reversed only if the evidence "compels a reasonable factfinder to reach a contrary result." *Id.* The IJ, however, must offer "specific cogent reason[s]" to doubt the petitioner's truthfulness. *Id.* (internal quotations and citations omitted).

The IJ identified three reasons for disbelieving Mr. Evangelista. First, his testimony was inconsistent, both with regard to dates and the sequence of certain important events. For example, there was a discrepancy of nearly two years in the date that the mayor allegedly first approached him. Second, Mr. Evangelista omitted from his testimony major incidents, such as torture, beatings, and the spraying of his house with bullets, which were noted in detail in his declaration. Third, he offered no corroborating evidence although some could have been obtained.

The inconsistencies identified by the IJ go to the heart of Mr. Evangelista's asylum claim and are not merely minor inconsistencies, especially when taken together with the IJ's other reasons for finding Mr. Evangelista unworthy of belief. Furthermore, "[t]he significant and relevant discrepancies between [an applicant's] asylum application and [his] later testimony at the evidentiary hearing clearly support an ad-

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. The IJ consolidated Cenon Escalona Evangelista's application with that of his wife, Marrylene Evangelista, because Mrs. Evangelista's asylum claim is based entirely upon Mr. Evangelista's asylum application and testimony.

2. Where, as here, the BIA affirms without opinion the results of the IJ's decision, we review the IJ's decision as the final agency determination. *See* 8 C.F.R. § 1003.1(a)(7)(iii).

verse credibility finding." *Lata v. INS,* 204 F.3d 1241, 1245 (9th Cir.2000). Finally, although an asylum applicant does not have to corroborate his testimony with extrinsic evidence, *see Shah v. INS,* 220 F.3d 1062, 1070 (9th Cir.2000), where an applicant's allegations are not otherwise credible and where corroborating evidence would be relatively easy to obtain, the failure to produce such evidence is a valid consideration in determining overall credibility. *See Sidhu v. INS,* 220 F.3d 1085, 1091–92 (9th Cir.2000). The IJ supported her adverse credibility determination by articulating "specific, cogent reasons," that are "substantial and ... bear a legitimate nexus to the [adverse credibility] finding." *Akinmade v. INS,* 196 F.3d 951, 954 (9th Cir.1999) (internal quotation marks and citations omitted).[3]

PETITION FOR REVIEW DENIED.

---

**3.** Because the petitioners have failed to demonstrate eligibility for asylum, they have necessarily failed to meet the more stringent standard for withholding of removal. *See Prasad v. INS,* 47 F.3d 336, 340 (9th Cir. 1995).