Tihomir Tzvetkov TODOROV,
Petitioner,

v.

John ASHCROFT, Attorney
General, Respondent.

No. 03–71657.

BIA No. A75–246–403.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 5, 2004.

Decided Dec. 8, 2004.

Baolin Chen, Portland, OR, for Petitioner.

Regional Counsel, Western Region Immigration & Naturalization Service, Laguna Niguel, CA, District Counsel, Office of the District Counsel, Department of Homeland Security, Portland, OR, Anh–Thu P. Mai, Margaret J. Perry, DOJ—U.S. Department of Justice Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before LEAVY, TROTT, Circuit Judges, and POLLAK, District Judge.*

MEMORANDUM **

Tihomir T. Todorov (Todorov), a native and citizen of Bulgaria, petitions for review of the decision of the Board of Immigration Appeals summarily affirming the denial by an Immigration Judge (IJ) of his claim for asylum and withholding of removal. We have jurisdiction pursuant to 8 U.S.C. § 1252. We review for substantial evidence and will uphold the determination unless the evidence compels a contrary result. *Molina–Estrada v. INS*, 293 F.3d 1089, 1093 (9th Cir.2002). We deny the petition for review.

Todorov claims he is eligible for asylum based on past persecution and a well-founded fear of future persecution in Bulgaria for his political opinions. Todorov's

---

* The Honorable Louis H. Pollak, Senior U.S. District Judge for the Eastern District of Pennsylvania, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

original asylum application, prepared by a Bulgarian non-lawyer shortly after Todorov arrived in this country, contained an untrue statement that Todorov was a Protestant Christian and that he and his family had also experienced problems because of their religion. Todorov, who is not fluent in English, was informed by the asylum preparer about the contents of the asylum application just before his interview with an asylum officer. The asylum officer did not ask Todorov any questions about his religion during his interview. Thereafter, Todorov, with the assistance of counsel, filed a correction to this statement in his asylum application before his asylum hearing, and was forthcoming in his testimony about his actual religion.

The IJ based the adverse credibility determination on the fact that Todorov was aware that the information about his religion was not true, yet Todorov made the informed decision to leave the application unchanged before his interview. The IJ found that Todorov's credibility was severely compromised because he "left intentionally false information in the declaration." The IJ concluded that Todorov failed to meet the burden of proof to establish eligibility for asylum.

Although reasonable minds may differ as to the relative weight of an initial false statement which is later corrected by the asylum applicant before his hearing, we must uphold the IJ's adverse credibility determination if the IJ states a legitimate basis to question the petitioner's credibility and offers a specific reason for any stated belief. *See Valderrama v. INS*, 260 F.3d 1083, 1085 (9th Cir.2001). Because the IJ gave such a reason, we cannot say that the evidence compels a contrary result. *See id.*

PETITION FOR REVIEW DENIED.

POLLAK, Senior District Judge, dissenting.

POLLAK, Senior District Judge.

I respectfully dissent.

Tihomir Tzvetkov Todorov fled Bulgaria, where he was allegedly persecuted for his political beliefs. When he arrived in the United States, Todorov, who could "hardly understand American English" and had no familiarity with immigration practice, had a non-lawyer Bulgarian, Krum Kiurciev, compile his asylum application materials. These included an affidavit in English describing the persecution that Todorov claimed to have faced in Bulgaria. The greater portion of this affidavit reported the numerous attacks and extortion campaigns allegedly inflicted upon Todorov by government-sponsored rogue groups who opposed Todorov's pro-democratic advocacy. In just two paragraphs of the five-page affidavit, and without informing Todorov, Kiurciev included a fabricated claim of religious persecution. Specifically, this portion of the affidavit described Todorov as a Protestant Christian (he is, in fact, nominally Orthodox Christian) who was persecuted on account of his religion.

Todorov first became aware of the fabricated religious persecution claim shortly before his asylum interview, when Kiurciev orally translated the English affidavit into Bulgarian to help Todorov prepare for the interview. Kiurciev encouraged Todorov to retain the recital about religious persecution since it would enhance his application, and Todorov's friends, who had also been helped by Kiurciev, counseled him to heed Kiurciev's advice. Thus, Todorov did not seek to correct his affidavit prior to his asylum interview, and the asylum officer did not question Todorov about his alleged religious persecution at the interview.

The INS based its initial decision to deny Todorov asylum solely on his claim of

political persecution. As a March 4, 1997 INS notice of intent to deny asylum stated, "You testified that you fear that you will be harmed by extortionists on account of your political opinion of opposition to communism." While the INS determined that Todorov's asylum claim was "credible," it concluded that there was no evidence that the mistreatment he suffered was motivated by opposition to his political beliefs.

Todorov was charged with overstaying his visitor's visa, and was served with a Notice to Appear before the INS. Todorov secured counsel, and alerted his counsel to the false statement in the initial asylum application. At his first hearing before the Immigration Judge (IJ), Todorov's attorney asked to submit a revised asylum application. The IJ denied the request, but permitted the attorney to submit any supplemental documentation that the attorney thought would be helpful. To this end, Todorov filed a sworn declaration that contained the following statement:

> My application indicated that I am a Protestant Christian. This is not true. I am nominally Eastern Orthodox. I did not receive religious instruction while growing up, although my grandparents did teach me some of the tenets of Eastern Orthodoxy.

The sworn affidavit also explained the circumstances surrounding his application for asylum, and the reason why he chose to retain the false information.

At his hearing before the IJ, Todorov had a further opportunity to explain the genesis and motivation behind the incorrect information in his asylum application. He told the IJ that Kiurciev had added the information about religious persecution to strengthen the asylum application, and that, when he, Todorov, did learn about the false statements, he chose to retain them on the advice of his friends who had also been helped by Kiurciev. On the

basis of Todorov's acquiescence in the falsehoods, the IJ determined that Todorov's claim of political persecution was not credible.

Importantly, the IJ believed Todorov's explanation regarding the reason why Todorov failed to disclose initially that his application contained incorrect information. As the IJ stated in his opinion, "[Todorov] says that [false claims were included in his application] to make his application stronger so that it would be more likely to be granted. This is the base reason why people lie and make false claims. They want to win.... [H]e made [the application] with the false statements so that he would have a better chance of winning."

Once the IJ accepted Todorov's story about why he lied, however, consistency should have required the IJ to accept Todorov's reports of political persecution, as well. Either Todorov's stated explanation for the inclusion of the incorrect information was to be rejected as false, in which case the IJ would have been on sound ground in discrediting anything else Todorov said, or that explanation was to be believed—as, indeed, the IJ did believe it—in which case the admitted falsehood provided the IJ with no reason to doubt the truth of the remainder of Todorov's statements. Insofar as the IJ determined that Todorov was credible with respect to his explanation for the falsehood but not credible with respect to the remainder of his affidavit and testimony, the IJ's credibility determination was arbitrary.

An adverse credibility determination should be upheld so long as it is supported by substantial evidence. *Lata v. INS*, 204 F.3d 1241, 1244 (9th Cir.2000). Put differently, an adverse credibility determination may be overturned if the evidence presented compels a conclusion contrary to the one at which the IJ arrived. 8 U.S.C.

§ 1252(b)(4)(B); *see also Abedini v. INS,* 971 F.2d 188, 191 (9th Cir.1992). That is precisely the situation here. Accepting, as the IJ did, Todorov's explanation for the false statements, the IJ should have accepted the remainder of Todorov's statements. Since the IJ did not do so, I would reverse the IJ's credibility finding. Further, since the IJ denied Todorv's asylum claim only because, having rejected Todorov's statements, the IJ was left with insufficient evidence to conclude that the "problems" he believed that Todorov suffered could not be imputed to political motives,[1] I would reverse the IJ's denial of asylum.

---

1. As the IJ stated,
   [t]he Court has accepted that he [Todorov] has had problems, but his failure to establish his claim is unequivocally linked with the false claims that he submitted and that the Court cannot rely on the significance and exact nature of what he says happened to him, and I am going by only the minimal corroboration that he presented by his witness, . . . and that is not enough to carry the burden of proof.

