MEMORANDUM ***
This dispute arises from the Board of Immigration Appeals’ (“BIA”) order affirming a decision by Immigration Judge Alberto E. Gonzales (“IJ”) finding respondents Saras Wati Chand and Ganeshwar Chand (“the Chands”) subject to removal as charged, and denying their applications for asylum, withholding of removal, and for relief under Article 3 of the United Nations Convention Against Torture. On appeal, the Chands challenge the IJ and BIA decisions on due process grounds, and contest their detention as unlawful. We take occasion to note the gross fraud on the law that made up the heart of the Chands’ case. The parties are familiar with the facts; we proceed to the law.
Claims of due process violations in immigration proceedings are reviewed de novo. Hernandez de Anderson v. Gonzales, 497 F.3d 927, 932 (9th Cir.2007). An immigration proceeding violates due process “if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case. The alien must also show prejudice.” Sanchez-Cruz v. I.N.S., 255 F.3d 775, 779 (9th Cir.2001) (citations omitted). In order to show prejudice, petitioners must demonstrate that the “alleged violation affected the outcome of the proceedings ... [the court] will not simply presume prejudice.” Lata v. INS, 204 F.3d 1241, 1246 (9th Cir.2000).
The Chands’ first due process argument pertains to their Freedom of Information Act request. Prior to the hearing, the Chands made a request under the Freedom of Information Act for documents and notes relating to their asylum claim. The Department of Homeland Security (“DHS”) provided most, but not all, of the requested documents. The Chands provide no specific argument or evidence pertaining to how the missing documents prejudiced their ability to present their case, or affected the outcome of the proceedings. In the absence of such evidence, this Court “will not simply presume prejudice.” Lata, 204 F.3d at 1246.
The Chands also argue that their due process rights were violated because they were unable to examine Dr. Gounder and Agent Grimes as witnesses during the hearing. The record suggests that Dr. Gounder was the Chands’ witness, rather than the government’s witness, and that he refused to testify at trial. The government was therefore not required to present Dr. Gounder as a witness. Nor was the fairness of the proceedings contingent on the presence of Agent Grimes, where Agent Lelea, Agent Grimes’ partner on the case, testified only to events that he expe *846 rienced first hand. Cf. Cinapian v. Holder, 567 F.3d 1067 (9th Cir.2009) (holding that “the combination of the government’s failure to disclose the DHS forensic reports in advance of the hearing or to make the reports’ author available for cross-examination and the IJ’s subsequent consideration of the reports under these circumstances denied Petitioner a fair hearing”).
Further, the Chands have failed to demonstrate that the absence of these persons prejudiced them by changing the outcome of their case. See Lata, 204 F.3d at 1246. The IJ based his adverse credibility determination on several factors largely unrelated to the presence of Dr. Gounder or Agent Grimes. The most striking piece of evidence was perhaps the testimony of Ra-man Nail', the Chands’ attorney during the initial stages of the asylum process. Nair and his employer, Rama Hiralal, have since been arrested and convicted of asylum fraud for filing false asylum claims on behalf of their clients. During the asylum hearing, Nair testified that (1) he had personally prepared the Chands’ asylum claim and that it was fraudulent; (2) that the application was based on a pre-existing document that was later personalized to include details about the Chands; (3) that he fabricated stories about sexual abuse, presumably including Mrs. Chand’ s, to make the asylum officers “feel sympathetic”; (4) that he incorporated Mr. Chand’s preexisting injury into a story about police torture; (5) that he helped secure false documents from Fiji to corroborate the Chands’ claims; and (6) that the Chands, like his other clients, knew that the contents of the application was false. The IJ found that Nair’s testimony was corroborated, in large part, by the testimony of DHS Special Agent Brian Jang, who had been the case agent in the criminal prosecution of Hiralal. This evidence is sufficient, notwithstanding the Chands’ due process arguments, to sustain the IJ’s adverse credibility finding.
Finally, the Chands challenge the BIA’s refusal to address their claim of unlawful detention. Despite making a timely appeal to the BIA, the Chands were taken into custody by DHS immediately following the removal hearing. They were released pursuant to a $75,000 bond. The BIA correctly stated that the Chands’ claim of unlawful detention “is not properly asserted in this removal proceeding.” Because bond proceedings are required by regulation to be separate from removal proceedings, 8 C.F.R. § 1003.19(d), the BIA will not consider issues relating to the respondent’s bond proceedings or custody determinations in an appeal from a removal order. See Matter of P-C-M-, 20 I. & N. Dec. 432 (BIA 1991). The law therefore requires the Chands to challenge their detention before the IJ or the district director in a separate proceeding.
AFFIRMED.

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.