**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FRANCISCO M. GONZAGA-ORTEGA,

*Petitioner*,

v.

ERIC H. HOLDER, JR., Attorney General,

*Respondent*.

No. 07-74361

Agency No.
A078-460-934

ORDER AND
AMENDED OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
July 18, 2012—San Francisco, California

Filed September 14, 2012
Amended June 7, 2013

Before: Richard R. Clifton and Mary H. Murguia, Circuit
Judges, and Raner C. Collins, District Judge.[*]

Order;
Opinion by Judge Clifton

---

[*] The Honorable Raner C. Collins, District Judge for the U.S. District
Court for Arizona, sitting by designation.

**SUMMARY**[**]

### Immigration

The panel ordered amended its opinion filed on September 14, 2012, and appearing at 694 F.3d 1069, and denied Francisco Gonzaga-Ortega's petition for review of the Board of Immigration Appeals' decision finding him inadmissible for knowingly trying to smuggle his niece across the border.

In the original and amended opinions, the panel held that border officers did not improperly deny Gonzaga-Ortega counsel while questioning him, and that officers were permitted to treat him as an "applicant for admission" under 8 U.S.C. § 1101(a)(13)(C)(iii), with no right to representation under 8 C.F.R. § 292.5(a). The amended opinion clarified that the IJ concluded that the government proved by clear, convincing, and unequivocal evidence that Gonzaga-Ortega engaged in illegal activity after having departed the United States.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Robert B. Jobe, San Francisco, California, for Petitioner.

Craig Alan Newell, Jr. (argued), Gregory G. Katsas, Blair T. O'Connor, Briena L. Strippoli, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for Respondent.

**ORDER**

The Opinion filed on September 14, 2012, and appearing at 694 F.3d 1069, is amended as follows:

1. On page 11264 of the slip opinion, second full paragraph (694 F.3d at 1072, third full paragraph), replace the third sentence with

> The IJ thus concluded that the government had proven by clear, convincing, and unequivocal evidence that Gonzaga had engaged in "illegal activity after having departed the United States," so the IJ deemed him an arriving alien and denied him admission into the United States. *See* 8 U.S.C. § 1101(a)(13)(C)(iii).

2. On page 11266 of the slip opinion, at the end of the paragraph that begins on the previous page (694 F.3d at 1073, first full paragraph), add a footnote and the end of the paragraph, following ". . . criminal investigation." The footnote is:

Gonzaga does not argue on appeal that he was, in fact, the focus of a criminal investigation and had been taken into custody at the time of his interrogation, such that he fell outside the exception in 8 C.F.R. § 292.5 and had a right to representation.

3. On page 11267 of the slip opinion, second full paragraph (694 F.3d at 1074, first full paragraph), replace the final sentence and add a footnote. As amended, the final sentence is:

Such a determination would have to be based upon clear and convincing evidence. *See Matter of Rivens*, 25 I.&N. Dec. 623, 625–26 (BIA 2011).

The footnote is:

At the removal hearing, the IJ found that the government had proven that Gonzaga was inadmissible as charged and had engaged in illegal activity after departing the United States, by "clear, convincing, and unequivocal" evidence. Gonzaga does not complain about the standard of proof employed by the IJ. Nor does he complain that the border officers applied an improper standard when the determination was made at the border to treat him as an applicant for admission. We do not speak to the issue of what standard should apply to any determination at the border. *See*, *e.g., Doe v. Attorney General*, 659 F.3d 266 (3d Cir.

2011) (adopting a "probable cause" standard); *see also Vartelas v. Holder*, 132 S. Ct. 1479, 1492 (2012) (implying in dicta that 'clear and convincing evidence' might be the appropriate standard for a determination at the border.")

4. On page 11268 of the slip opinion, first full paragraph (694 F.3d at 1074, third full paragraph), replace the first sentence with

> If the border officials get the decision wrong—if in this instance it were later concluded that the border officials lacked the necessary basis to conclude that Gonzaga had engaged in illegal activity—then some remedy might be in order.

5. On page 11272 of the slip opinion (694 F.3d at 1076, last paragraph), add a new sentence after the first two sentences and delete a portion of the second to last sentence. The new sentence is:

> Gonzaga did not claim that he was coerced by threats of punishment if he did not admit the allegations against him.

The portion of the second to last sentence to be deleted is "or to have been prejudiced by the admission of his statements". As amended, the paragraph is:

> Gonzaga's contention that his confession was coerced was rejected by the IJ and the BIA. The IJ concluded that there was no basis for believing that Gonzaga had been cajoled

into giving the officers a statement against his will. Gonzaga did not claim that he was coerced by threats of punishment if he did not admit the allegations against him. The IJ cited Gonzaga's own statements in the transcribed interview that he had been treated "fine" and that he made his statements "voluntarily." The IJ also cited the lack of any indication of physical abuse, and the relatively brief period that Gonzaga was held. He also noted that there was no indication that the facts related by Gonzaga during the interview were false, and that Gonzaga in his declaration never mentioned his niece's presence or denied his involvement in alien smuggling. The BIA similarly concluded that there was no support in the record for Gonzaga's claims to have been denied a fair hearing. Our conclusion is the same.

With these amendments, the panel has voted to deny the petition for rehearing. Judge Clifton and Judge Murguia voted to deny the petition for rehearing en banc and Judge Collins so recommends.

The full court has been advised of the petition for rehearing en banc and no active judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for rehearing and petition for rehearing en banc, filed on December 13, 2012, are **DENIED**. No further petition for rehearing and/or petition for rehearing en banc may be filed.

**OPINION**

CLIFTON, Circuit Judge:

Francisco Gonzaga-Ortega ("Gonzaga") petitions for review of a decision of the Board of Immigration Appeals ("BIA") dismissing his appeal of an order of removal. The principal legal question raised by the petition is whether Gonzaga was improperly denied counsel during questioning at the border based on a determination by immigration officers that he had engaged in illegal activity by trying to smuggle his niece across the border. A right to counsel is provided in 8 C.F.R. § 292.5(b), but that regulation expressly states that it does not provide a right to representation to any "applicant for admission" in primary or secondary inspection except under circumstances that did not apply here. Gonzaga was a lawful permanent resident ("LPR"), and an LPR returning to the United States ordinarily is not treated as an "applicant for admission" under 8 U.S.C. § 1101(a)(13)(C). That statute contains six exceptions, though, one of which excludes an LPR who "has engaged in illegal activity after having departed the United States." 8 U.S.C. § 1101(a)(13)(C)(iii). Gonzaga argues that a finding that he engaged in illegal activity could not properly be made by officers at the border and that he was entitled to counsel until a final administrative determination had been made by an Immigration Judge ("IJ") and the BIA. We disagree and hold that the border officers were permitted to treat Gonzaga as an applicant for admission based on their conclusion that Gonzaga had engaged in illegal activity, without waiting for a final administrative determination. We also reject Gonzaga's claims that his statements admitting the attempt to smuggle his niece across the border were coerced and used

against him in violation of due process. We therefore deny the petition.

## I.  Background

Gonzaga is a native and citizen of Mexico. He entered the United States illegally in 1989 but was granted LPR status in 2001.

After a one-week vacation visiting family in Mexico, Gonzaga attempted to reenter the United States at the San Ysidro Port of Entry on May 12, 2004, at approximately 6 p.m. In the car with Gonzaga were his wife, their eight-month old daughter, and their fifteen-year-old niece, Marisol Madera Arroyo. Gonzaga presented his resident alien card, his wife presented her valid visitor visa and a United States birth certificate on behalf of their daughter, and the niece orally declared herself to be a United States citizen. Suspecting the niece of making a false statement, the officer at the primary inspection point referred the vehicle and its occupants to secondary inspection for further investigation. During secondary inspection, Gonzaga's niece admitted to being a citizen of Mexico with no legal documents or benefits to enter, pass through, or reside in the United States.

After being detained for most of the night, Gonzaga's wife and daughter were released early the next morning. Gonzaga was also detained overnight and was interviewed late the next day by Officer Georgina Rios, with another officer acting as a witness. Rios later testified that it was regular practice to conduct interviews as soon as possible, but the time delay varied depending on caseload. In Gonzaga's case, his formal interview was conducted approximately 28 hours after he presented himself at the port of entry. The

interview was conducted in Spanish, Gonzaga's native language. It was translated, transcribed and later admitted into evidence by the IJ as a record of sworn statement.

During the interview Gonzaga disclosed that he agreed to bring his niece over the border at the request of her parents. He said that he knew his niece had no legal documents to enter the United States, and that he told her she should say she was a United States citizen if anyone asked. At the end of the interview, Gonzaga stated that he had been treated "fine" since arriving at the immigration station and agreed that he had given his statement "voluntarily," not having been forced or threatened in any way.

Rios recorded information taken from the interview in a Form I-213, Record of Deportable/Inadmissible Alien. Rios served Gonzaga with a Notice to Appear, and he was thereafter paroled into the United States. On May 17, 2004, the Department of Homeland Security initiated removal proceedings against Gonzaga by filing a Notice to Appear with the Immigration Court, charging him as inadmissible under 8 U.S.C. § 1182(a)(6)(E)(i) as an alien who had knowingly "encouraged, induced, assisted, abetted, or aided any other alien to enter or try to enter the United States in violation of law."

Before the IJ, Gonzaga filed a motion to suppress all physical and testimonial evidence obtained or derived as a result of his interrogation at the secondary inspection point. He also submitted a sworn declaration describing the conditions of his detention. In this declaration, Gonzaga described being held for approximately 28 hours, kept in a holding room with 15 other men, and fed only twice with meals consisting of a sandwich, carrots, and water. He claims

that he was not allowed to contact anyone outside of the facility, and that he feared he would be kept in detention until he gave his story. Gonzaga stated that Rios yelled at him and pressured him to tell his story, and that she never informed him that he had the right to remain silent or the right to retain counsel. In her testimony before the IJ, Rios denied ever yelling, threatening, or pressuring Gonzaga.

The IJ conducted a merits hearing on May 24, 2006, at the conclusion of which he rendered an oral decision denying Gonzaga's motion to suppress, finding Gonzaga inadmissible as charged, and ordering him removed to Mexico. Relying on the sworn interview transcript, the report of the interview contained in the Form I-213, and testimony by Officer Rios, the IJ concluded that Gonzaga knowingly attempted to smuggle his alien niece across the border. The IJ thus concluded that the government had proven by clear, convincing, and unequivocal evidence that Gonzaga had engaged in "illegal activity after having departed the United States," so the IJ deemed him an arriving alien and denied him admission into the United States. *See* 8 U.S.C. § 1101(a)(13)(C)(iii). In denying Gonzaga's motion to suppress, the IJ held that Gonzaga had not been entitled to have an attorney present during the secondary inspection because he was properly treated as an arriving alien, so that 8 C.F.R. § 292.5(b) did not apply even though Gonzaga was an LPR. The IJ also found that the conditions in which Gonzaga was held were not unsatisfactory and that he had not been coerced into giving his confession. Gonzaga appealed this decision to the BIA.

The BIA adopted and affirmed the decision of the IJ, with a citation to *Matter of Burbano*, 20 I. & N. Dec. 872, 874 (BIA 1994), adding a few comments in support of the

conclusion. The BIA specifically stated that the IJ did not err in admitting the record of sworn statement and Form I-213. It also cited Rios's testimony to further support the veracity of the information contained in these two documents. Finally, it held that Gonzaga's due process rights were not violated.

## II. Discussion

When the BIA adopts the IJ's decision with a citation to *Matter of Burbano* and also adds its own comments, as it did here, we review the decisions of both the BIA and the IJ. *See Ali v. Holder*, 637 F.3d 1025, 1028 (9th Cir. 2011). We review determinations of purely legal questions, including claims of due process violations, de novo. *Cruz Rendon v. Holder*, 603 F.3d 1104, 1109 (9th Cir. 2010); *Hamazaspyan v. Holder*, 590 F.3d 744, 747 (9th Cir. 2009). Findings of fact, such as whether an individual engaged in alien smuggling, are reviewed for substantial evidence and upheld "'unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Lopez-Cardona v. Holder*, 662 F.3d 1110, 1111 (9th Cir. 2011) (quoting 8 U.S.C. § 1252(b)(4)(B)).

### A. The Right to Counsel Under 8 C.F.R. § 292.5(b)

Gonzaga contends that he was entitled to counsel during secondary inspection at the port of entry under 8 C.F.R. § 292.5(b), and that any statements made thereafter and all other evidence obtained as a result should have been excluded from consideration because he was denied counsel.

The regulation states:

> Whenever an examination is provided for in this chapter, the person involved shall have the right to be represented by an attorney or representative . . . . Provided, that nothing in this paragraph shall be construed to provide any applicant for admission in either primary or secondary inspection the right to representation, unless the applicant for admission has become the focus of a criminal investigation and has been taken into custody.

8 C.F.R. § 292.5(b). The IJ, affirmed by the BIA, held that Gonzaga did not have a right to representation at secondary inspection because he fell within the express exception for an "applicant for admission" who had not become the focus of a criminal investigation.[1]

Ordinarily a returning LPR is not treated as an "applicant for admission." But the statute that so provides includes six exceptions, one of which covered Gonzaga. The statute states that "[a]n alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws unless the alien . . . has engaged in illegal activity after having departed the United States." 8 U.S.C. § 1101(a)(13)(C)(iii); *see United States v. Tsai*, 282 F.3d 690,

---

[1] Gonzaga does not argue on appeal that he was, in fact, the focus of a criminal investigation and had been taken into custody at the time of his interrogation, such that he fell outside the exception in 8 C.F.R. § 292.5 and had a right to representation.

696 n.5 (9th Cir. 2002); *see also Vartelas v. Holder*, 132 S. Ct. 1479, 1484–85 (2012).

The IJ concluded that Gonzaga had engaged in illegal activity after departing the United States by his "conscious participation in an unlawful scheme to try to get his niece Marisol across the border illegally." Such activity constitutes a criminal act under 8 U.S.C. § 1324(a)(2), which provides criminal penalties for "[a]ny person who, knowing or in reckless disregard of the fact that an alien has not received prior official authorization to come to, enter, or reside in the United States, brings to or attempts to bring to the Untied States in any manner whatsoever, such alien." The IJ noted that Gonzaga had not presented any defense to the substance of the alien smuggling charge.

Gonzaga has not presented any defense or denied his involvement in alien smuggling in his petition to this court, either. Nor has he denied that his participation in the attempt to bring his niece across the border constituted "illegal activity," though he did note that the government did not thereafter bring any criminal charges against him.

The thrust of the argument presented to us by Gonzaga is that a determination as to whether an LPR is subject to one of the exceptions set forth in 8 U.S.C. § 1101(a)(13)(C) can only be made by an IJ and the BIA and cannot be made by immigration officers at the border. He does not argue that the later determination by the IJ, affirmed by the BIA, that Gonzaga had engaged in illegal activity was incorrect, though he complains that it was based upon evidence that should not have been considered, including his confession. Instead, he argues, in the words of his opening brief, that "lawful permanent residents like [himself] have 'the right to be

represented by an attorney or other representative' until there is a final administrative determination that they have engaged in activities which except them from the general rule set forth in INA § 101(a)(13)(C), 8 U.S.C. § 1101(a)(13)(C)." Such a determination would have to be based upon clear and convincing evidence. *See Matter of Rivens*, 25 I.&N. Dec. 623, 625–26 (BIA 2011).[2]

Gonzaga's argument is not consistent with the language of the statute or with logic. The statute says that an LPR should not be regarded as an applicant for admission unless he has, among other things, "engaged in illegal activity." It does not say unless he had already been adjudicated as having engaged in illegal activity. How a person who presents himself for admission into the United States is to be treated – in this instance, whether Gonzaga was entitled to counsel during secondary inspection – is a decision that has to be made at that time, on the spot, by immigration officers at the border. It cannot wait for the ultimate adjudication of that person's case before an IJ and the BIA many years later. The INA assigns responsibility to immigration officers to make decisions regarding the admission of persons who present

---

[2] At the removal hearing, the IJ found that the government had proven that Gonzaga was inadmissible as charged and had engaged in illegal activity after departing the United States, by "clear, convincing, and unequivocal" evidence. Gonzaga does not complain about the standard of proof employed by the IJ. Nor does he complain that the border officers applied an improper standard when the determination was made at the border to treat him as an applicant for admission. We do not speak to the issue of what standard should apply to any determination at the border. *See, e.g., Doe v. Attorney General*, 659 F.3d 266 (3d Cir. 2011) (adopting a "probable cause" standard); *see also Vartelas v. Holder*, 132 S. Ct. 1479, 1492 (2012) (implying in dicta that "clear and convincing evidence" might be the appropriate standard for a determination at the border.)

themselves at the border. *See, e.g.*, 8 U.S.C. § 1225(b)(2). Those decisions are subject to review, but the officers are entitled to make them.

If the border officials get the decision wrong—if in this instance it were later concluded that the border officials lacked the necessary basis to conclude that Gonzaga had engaged in illegal activity—then some remedy might be in order. But in this case, they did not get the decision wrong. As a result, we do not need to reach the question of what remedy, including exclusion of evidence, would be appropriate. *See INS v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984).

In a letter submitted to us under Fed. R. App. P. 28(j) and at oral argument, Gonzaga cited a decision of the Supreme Court earlier this year, *Vartelas v. Holder*, 132 S. Ct. 1479 (2012), in support of his argument. That case involved another one of the six exceptions in 8 U.S.C. § 1101(a)(13)(C) under which an LPR should be treated instead as an "applicant for admission," specifically the exception in subpart (v). Under that provision, an LPR should not be treated as an applicant for admission, unless he "has committed an offense identified in section 1182(a)(2) of this title." 8 U.S.C. § 1101(a)(13)(C)(v). Offenses identified in § 1182(a)(2) include "a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime." 8 U.S.C. § 1182(a)(2)(A)(i)(I); *see Vartelas*, 132 S. Ct. at 1485.

The six exceptions for treating an LPR as an applicant for admission were added to the statute as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), 110 Stat. 3009-546. The holding of

*Vartelas*, that the 1996 amendment should not be applied retroactively to Vartelas based on his 1994 plea of guilty to a felony prior to the adoption of the amendment, does not help Gonzaga.  Gonzaga became an LPR after IIRIRA was enacted, and the illegal activity in which he was found to have engaged similarly took place after the enactment, in 2004, so there is no element of retroactivity involved here.

Gonzaga attempts, nonetheless, to squeeze support from comments made at the end of the majority opinion in *Vartelas*, in response to the dissent, drawing support from the Supreme Court's previous decision in *INS v. St. Cyr*, 533 U.S. 289 (2001).  In the course of that discussion, the Court said in *Vartelas* that it saw no practical difference between the statutory provision relevant in *St. Cyr*, which referred to an alien's "convict[ion]" of a crime and the provision relevant in *Vartelas*, "committed an offense."    Those two statutory references in the Court's decision were followed by a footnote:

> After the words "committed an offense," § 1101(a)(13)(C)(v)' s next words are "identified in section 1182(a)(2)." That section refers to "any alien *convicted of*, or who admits having committed," *inter alia*, "a crime involving moral turpitude." § 1182(a)(2)(A)(i)(I) (emphasis added). The entire § 1101(a)(13)(C)(v) phrase "committed an offense identified in section 1182(a)(2)," on straightforward reading, appears to advert to a lawful permanent resident who has been convicted of an offense under § 1182(a)(2) (or admits to one).

*Vartelas*, 132 S. Ct. at 1492 n.11. The decision then went on to state: "Ordinarily, to determine whether there is clear and convincing evidence that an alien has committed a qualifying crime, the immigration officer at the border would check the alien's records for a conviction. He would not call into session a piepowder court to entertain a plea or conduct a trial." *Id*. at 1492. Another footnote provided a helpful explanation of the term "piepowder court":

> Piepowder ("dusty feet") courts were temporary mercantile courts held at trade fairs in Medieval Europe; local merchants and guild members would assemble to hear commercial disputes. These courts provided fast and informal resolution of trade conflicts, settling cases "while the merchants' feet were still dusty." Callahan, Medieval Church Norms and Fiduciary Duties in Partnership, 26 Cardozo L. Rev. 215, 235, and n. 99 (2004) (internal quotation marks omitted) (quoting H. Berman, Law and Revolution: The Formation of the Western Legal Tradition 347 (1983)).

*Id*. at 1492 n.12.

From this discussion Gonzaga seeks to infer support for the proposition that an immigration officer at the border is precluded from making a determination that a returning LPR should be treated as an applicant for admission and is limited to relying upon a prior conviction or an admission by the alien that he had in fact committed the offense. Leaving aside the remoteness of this discussion from the actual holding in

*Vartelas*, we disagree with Gonzaga's interpretation for two separate reasons.

First, the purported interpretation of § 1101(a)(13)(C)(v) to require a conviction or confession does not speak to the provision that was applied to Gonzaga, subpart (iii), as someone who "has engaged in illegal activity after having departed the United States." The Court's explanation in footnote 10 of the requirement for a conviction or confession was explicitly based on the language of the section of the statute referred to in subpart (v), § 1182(a)(2), as the quotation of footnote 10 above illustrates. There is no similar limiting reference in subpart (iii) requiring a prior conviction or confession. Moreover, if the illegal activity was engaged in after departure from the United States, there presumably could not have been a conviction, at least not in a United States court, by the time the alien presented himself at the port of entry seeking to reenter the country.

Second, as noted above, the decision as to how Gonzaga was to be treated at the port of entry was necessarily one that had to be made by officers at the border. It was subject to subsequent review by an IJ and the BIA and by this court. The border officers did not need to convene any piepowder court, for that review was available in due course, and Gonzaga has obtained it. If the officers' determination was held to be incorrect, an appropriate remedy might be considered. But the determination in this case that Gonzaga had engaged in illegal activity after having departed the United States was not incorrect. Treating him as an applicant for admission did not deny him any legal rights.

Because Gonzaga was properly deemed an "applicant for admission" pursuant to 8 U.S.C. § 1101(a)(13)(C)(iii), we

conclude that 8 C.F.R. § 292.5(b) did not entitle him to counsel during primary or secondary inspection. Accordingly, because the immigration officers did not obtain Gonzaga's confession in violation of the regulation, the IJ and BIA did not err in considering it. *See Chuyon Yon Hong v. Mukasey*, 518 F.3d 1030, 1036 (9th Cir. 2008).

## B.  Due Process Violation

"Immigration proceedings . . . must conform to the Fifth Amendment's requirement of due process." *Salgado-Diaz v. Gonzales*, 395 F.3d 1158, 1162 (9th Cir. 2005). "Expulsion cannot turn upon utterances cudgeled from the alien by governmental authorities; statements made by the alien and used to achieve his deportation must be voluntarily given." *Bong Youn Choy v. Barber*, 279 F.2d 642, 646 (9th Cir. 1960). Gonzaga must demonstrate error and substantial prejudice to prevail on a due process claim. *Lata v. INS*, 204 F.3d 1241, 1246 (9th Cir. 2000).

Gonzaga's contention that his confession was coerced was rejected by the IJ and the BIA. The IJ concluded that there was no basis for believing that Gonzaga had been cajoled into giving the officers a statement against his will. Gonzaga did not claim that he was coerced by threats of punishment if he did not admit the allegations against him. The IJ cited Gonzaga's own statements in the transcribed interview that he had been treated "fine" and that he made his statements "voluntarily." The IJ also cited the lack of any indication of physical abuse, and the relatively brief period that Gonzaga was held. He also noted that there was no indication that the facts related by Gonzaga during the interview were false, and that Gonzaga in his declaration never mentioned his niece's presence or denied his

involvement in alien smuggling. The BIA similarly concluded that there was no support in the record for Gonzaga's claims to have been denied a fair hearing. Our conclusion is the same.

**PETITION DENIED.**