**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3577
_____

CHARLES ISAAC MENSAH,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,
                                        Respondent
_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
(Agency No. A046-708-354)
Immigration Judge: John B. Carle
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 19, 2018

Before:  JORDAN, RESTREPO and SCIRICA, <u>Circuit</u> <u>Judges</u>

(Opinion filed:  August 27, 2018)
_____

OPINION*
_____

PER CURIAM

_____
* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Charles Isaac Mensah petitions for review of the Board of Immigration Appeals' final order of removal. For the reasons that follow, we will deny the petition for review.

Mensah, a native and citizen of Ghana, was admitted to the United States on October 30, 1999 as a lawful permanent resident. He joined the United States Marine Corps in September 2001 and served until February 2005, when he received a bad conduct discharge. In June 2009, Mensah was charged in the United States District Court for the Western District of New York with several violations of the Controlled Substance Act, and released on a cash bond. He was placed on pretrial supervision and was not permitted to leave the United States. In June 2011, Mensah traveled to Ghana to visit his grandmother. When the pretrial supervision unit found out they issued a warrant for his arrest. When Mensah returned to the United States on September 29, 2011, the Department of Homeland Security ("DHS") deemed him to be an arriving alien seeking admission, rather than a lawful permanent resident, and paroled him into the United States for prosecution based on the outstanding arrest warrant relating to the drug trafficking charges.

In February 2012, a jury found Mensah guilty of (1) conspiracy to possess with intent to distribute and to distribute fifty grams or more of a controlled substance, in violation of 21 U.S.C. § 846, as it relates to 21 U.S.C. § 841(a)(1) and 841(b)(1)(B); and (2) use of a communication facility to commit a drug trafficking crime in violation of 21 U.S.C. § 843(b). The judgment of conviction was entered on June 11, 2012, and Mensah was sentenced to a term of imprisonment of 72 months, which subsequently was reduced

2

to 70 months. On March 25, 2013, the United States Court of Appeals for the Second Circuit affirmed the criminal judgment.

On February 6, 2017, the Department of Homeland Security ("DHS") placed Mensah in removal proceedings, charging him as inadmissible rather than deportable. Specifically, DHS charged Mensah with inadmissibility under 8 U.S.C. § 1182(a)(2)(C) as an individual who an immigration officer knows or has reason to believe is or has been an illicit trafficker in any controlled substance; under § 1182(a)(2)(A)(i)(I) for having been convicted of a crime involving moral turpitude, or a conspiracy to commit such a crime; and under § 1182(a)(2)(A)(i)(II) for having been convicted of a violation of any law of the United States relating to a controlled substance. Mensah filed a motion to terminate his removal proceedings. In this motion, he argued that he should not have been paroled into the United States for prosecution or charged in the Notice To Appear as an arriving alien seeking admission. He argued that at the time of re-entry he had not yet been *convicted* of any offenses in § 1182(a)(2), and thus it was error for DHS to have determined that he had "committed" such an offense for purposes of 8 U.S.C. § 1101(a)(13)(C)(v). Mensah also argued that he was not removable for a crime involving moral turpitude.

On April 6, 2017, the Immigration Judge issued a decision denying Mensah's motion to terminate and sustaining the charges of removal. The IJ determined that DHS properly treated Mensah as an applicant for admission when he returned from Ghana to the United States in 2011, and properly paroled him for prosecution, citing controlling precedent in this circuit, Doe v. Att'y Gen. of the U.S., 659 F.3d 266 (3d Cir. 2011). The

3

IJ found that the existence of a properly issued arrest warrant for an offense identified in § 1182(a)(2) was sufficient evidence for DHS to conclude that Mensah had "committed" such an offense and to treat him as an applicant for admission under Doe. The IJ further found that the offenses for which Mensah was arrested qualified as offenses identified in § 1182(a)(2).

Mensah then filed an application for asylum, withholding of removal, and protection under the Convention Against Torture. In support, he submitted a written declaration, a letter from a lawyer in Ghana, and evidence of conditions in Ghana, including the 2014 U.S. Department of State Report on Human Rights Practices in Ghana. At his merits hearing, Mensah testified that, while in Ghana visiting his grandmother in 2011, he was kidnapped by Boko Haram-affiliated individuals who threatened to kill him if he did not join their group and share his military expertise. Mensah testified that, although he was able to free himself by promising to think about joining the group, he feared being harmed by them in the future and so he promptly returned to the United States. Later, these individuals came to his grandmother's house looking for him; she told them he had gone to the United States. Mensah testified that he did not go to the police about the kidnapping because he believed the police to be corrupt.

On July 12, 2017, the IJ denied Mensah's CAT application and ordered his removal to Ghana.[1] The IJ determined that, although Mensah's testimony was credible, he had not established that he more likely than not would be tortured by or with the

---

[1] The IJ found that Mensah was ineligible for asylum and withholding of removal, a determination which Mensah has not challenged.

acquiescence of the government in Ghana. The IJ found it significant that seven years had passed since Mensah was last in Ghana, and, although the men Mensah encountered in 2011 had looked for him one time, they had not communicated any threats when his grandmother told them that he was in the United States. The IJ further found that there was no evidence that anyone in Ghana was currently looking for Mensah.

Mensah appealed to the Board of Immigration Appeals, contending that he should not have been regarded as an alien applying for admission when he returned to the United States in 2011; and that the IJ erred in denying his application for deferral of removal under the CAT. On November 17, 2017, the Board dismissed Mensah's appeal. Noting that a lawful permanent resident cannot be regarded as seeking admission into the United States unless he falls into one of six categories listed in 8 U.S.C. § 1101(a)(13)(C), the Board applied its recent precedent, pursuant to which DHS is required to show that the alien falls into one of the six categories by "clear and convincing evidence." That precedent further provides, however, that DHS need not meet its burden of proof at the time of re-entry when the decision to parole the individual for prosecution is made; instead, DHS may rely on the individual's subsequent conviction to establish by "clear and convincing evidence" in later removal proceedings that he committed an offense identified in § 1182(a)(2). Therefore, because Mensah subsequently was convicted, he was properly treated as an arriving alien seeking admission, properly subject to parole for prosecution, and properly charged in the Notice To Appear as an inadmissible alien. The Board affirmed the IJ's denial of Mensah's request for deferral of removal under the

CAT, finding no clear error in the IJ's predictive findings as to the lack of a likelihood that Mensah would be tortured in Ghana.

Mensah petitions for review. We generally have jurisdiction under 8 U.S.C. § 1252(a)(1), (b)(1), but where the petitioner's removal order is based on a conviction for a controlled substance offense, review is limited to colorable constitutional claims and questions of law. See 8 U.S.C. § 1252(a)(2)(C)-(D); Green v. Att'y Gen. of U.S., 694 F.3d 503, 506 (3d Cir. 2012). Mensah's contention that the agency erred in treating him as an applicant for admission subject to inadmissibility grounds for removal, is a reviewable legal question.

We will deny the petition for review. Where, as here, the Board issues its own decision on the merits, we review the Board's decision and consider the IJ's decision only insofar as the Board deferred to it. See Roye v. Att'y Gen. of U.S., 693 F.3d 333, 339 (3d Cir. 2012). In general, lawful permanent residents who return to the United States after a trip abroad are not "regarded as seeking an admission into the United States for purposes of the immigration laws." 8 U.S.C. § 1101(a)(13)(C). The statute, however, provides six exceptions to this general rule, one of which applies if the alien "has committed an offense identified in section 1182(a)(2) of this title." 8 U.S.C. § 1101(a)(13)(C)(v). The offenses identified in § 1182(a)(2) include: a violation of or a conspiracy to violate a law relating to a controlled substance, id. at § 1182(a)(2)(A)(i)(II); and a crime involving moral turpitude, or conspiracy to commit such a crime, id. at § 1182(a)(2)(A)(i)(I). In addition, subparagraph (C) of § 1182(a)(2) makes inadmissible

6

any alien who the Attorney General "knows or has reason to believe" has "been an illicit trafficker in any controlled substance." Id. at § 1182(a)(2)(C).

The exception stated in § 1101(a)(13)(C)(v), namely, the commission of an offense identified in § 1182(a)(2), coincides with the grounds of inadmissibility charged by DHS in Mensah's case. We uphold the agency's determination that Mensah's conviction under 21 U.S.C. § 846 for conspiracy to possess with intent to distribute and to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), is categorically a violation of a law relating to a controlled substance under 8 U.S.C. § 1182(a)(2)(A)(i)(II). We also uphold the agency's determination that Mensah's conspiracy conviction makes him inadmissible under § 1182(a)(2)(C) as someone who the Attorney General knows or has reason to believe is or has been an illicit trafficker in a controlled substance. The agency also concluded that Mensah's conviction under 21 U.S.C. § 841(a)(1) is a crime involving moral turpitude under 8 U.S.C. § 1182(a)(2)(A)(i)(I). Mensah argues that this was legal error and, because it was legal error, charging him as inadmissible rather than deportable was legal error. Petitioner's Pro Se Brief, at 21. Because we are upholding the other charged grounds of inadmissibility, we need not reach this issue.

We turn then to the remaining issue concerning DHS's burden to prove that a returning lawful permanent resident falls within one or more of the six enumerated exceptions in § 1101(a)(13)(C) and is therefore to be regarded as seeking admission into the United States. As noted by the agency and the parties, we and the Board have different approaches for determining whether a lawful permanent resident like Mensah

7

who is returning to the United States from a trip abroad should be treated as an arriving alien seeking admission and paroled for prosecution. Under our decision in <u>Doe</u>, the determination is made at the time of the lawful permanent resident's re-entry into the United States, 659 F.3d at 270, but DHS may determine that he has "committed" a qualifying § 1182(a)(2) offense for purposes of § 1101(a)(13)(C)(v), and treat him as an applicant for admission and parole him for prosecution, so long as the immigration officer at the point of entry has "probable cause to believe" that he has committed one of the crimes identified § 1182(a)(2)." <u>Id.</u> at 272. Where a warrant has been issued for the arrest of the returning lawful permanent resident, probable cause will be presumed. <u>Id.</u> Here, it is uncontested that at the time of Mensah's return to the United States from Ghana in 2011, there was a valid outstanding warrant for his arrest relating to federal charges for drug trafficking. Therefore, DHS had probable cause to believe that Mensah had committed the crimes for which he was arrested, and properly exercised its authority to treat him as an arriving alien seeking admission and parole him for prosecution.[2]

After our decision in <u>Doe</u>, the Board issued two precedential decisions -- <u>Matter of Rivens</u>, 25 I. & N. Dec 623 (BIA 2011), and <u>Matter of Valenzuela-Feliz</u>, 26 I. & N. Dec 53 (BIA 2012) -- interpreting 8 U.S.C. § 1101(a)(13)(C)(v) and adopting a different approach. In <u>Matter of Rivens</u>, 25 I. & N. Dec. at 625-26, the Board addressed what

---

[2] <u>Doe</u> was a 2-1 decision in part. In dissent, Judge Rendell argued that the majority's decision that the "probable cause to believe" burden of proof is sufficient at the port of entry was flawed and in conflict with the First Circuit Court of Appeals' decision in <u>De Vega v. Gonzales</u>, 503 F.3d 45, 47 (1st Cir. 2007). <u>Doe</u>, 659 F.3d at 280 (Rendell, J., dissenting in part). Mensah argues that we should apply <u>De Vega</u> to his case, <u>see</u> Petitioner's Pro Se Brief, at 15, but the decision of the <u>Doe</u> majority controls here.

burden of proof applies to the question whether a returning lawful permanent resident is to be treated as an applicant for admission and is therefore subject to the inadmissibility grounds for removal, rather than the deportability grounds. The Board held that DHS bears the burden of proving by clear and convincing evidence that a returning lawful permanent resident falls within one or more of the six enumerated exceptions in § 1101(a)(13)(C). In Matter of Valenzuela-Felix, the Board further held that "in the context of the parole of a returning lawful permanent resident for purposes of prosecution of pending criminal charges, the DHS need not already possess all of the evidence pertinent to sustaining its burden at the time the lawful permanent resident first seeks to come back into the United States, and it ordinarily may rely on the results of the prosecution for purposes of applying [§ 1101(a)(13)(C)(v)] in any subsequent removal proceedings." 26 I. & N. Dec. at 64-65. The Board reasoned that "admissibility is authoritatively determined on the basis of the law and facts existing, not at the time the alien first presents himself at the port of entry, but at the time the application for admission is finally considered during … proceedings before the Immigration Judge[.]" Id. at 56. The Board was "unable to agree with us that, for purposes of the assessment of the validity of a subsequent removal proceeding, the DHS must meet a threshold standard before it may parole a returning lawful permanent resident into the United States for prosecution and then charge him with inadmissibility on the basis of the results," id. at 62, but observed that under either approach, the result would be the same for a lawful permanent resident who has been indicted for and is later convicted of a qualifying crime, id. at 61.

9

The Attorney General has urged us to apply the Board's approach rather than the approach we took in <u>Doe</u> to the issue presented by Mensah's petition for review because it is reasonable and entitled to deference, <u>see</u> <u>Chevron, USA, Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 844 (1984) ("We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer[.]").  Respondent's Brief, at 25-26, 28-29. Specifically, the Attorney General argues that, in adopting its approach, the Board considered DHS's authority under 8 U.S.C. § 1182(d)(5) to make parole determinations at the border, and that "the imposition of a threshold test on DHS's parole determinations [is] unnecessary given that parole does not remove an individual's lawful permanent resident status and the government will be held to its burden of proving that a returning lawful permanent resident is properly regarded as an applicant for admission by clear and convincing evidence at the merits hearing, if removal proceedings are initiated."  <u>Id.</u> at 27.  Under our Internal Operating Procedures, however, a panel of this Court cannot overrule an earlier binding panel decision; only the entire court sitting en banc can do so. <u>See</u> Third Circuit I.O.P. 9.1.  The <u>Doe</u> panel unanimously held that the § 1101(a)(13)(C)(v) determination whether a returning lawful permanent resident has "committed an offense identified in section 1182(a)(2)" is determined at the time of re-entry.  659 F.3d at 277 (Rendell, J., concurring in part).[3]

---

[3] "[A] panel of our Court may decline to follow a prior decision of our Court without the necessity of an en banc decision when the prior decision conflicts with a Supreme Court decision."  <u>United States v. Tann</u>, 577 F.3d 533, 541 (3d Cir. 2009).  Mensah argues that <u>Vartelas v. Holder</u>, 566 U.S. 257 (2012), supports his argument that the "probable cause

With respect to deferral of removal under the Convention Against Torture, <u>Kaplun v. Att'y Gen. of U.S.</u>, 602 F.3d 260 (3d Cir. 2010), holds that whether future torture is likely turned on two questions: "(1) what is likely to happen to the petitioner if removed; and (2) does what is likely to happen amount to the legal definition of torture?" <u>Id.</u> at 271. The first question is factual; only the second is legal and thus reviewable. <u>Id.</u> <u>See also</u> <u>Pieschacon-Villegas v. Att'y Gen. of U.S.</u>, 671 F.3d 303, 310 (3d Cir. 2011) (same). The IJ concluded that Mensah had not shown that anything amounting to torture would happen to him upon returning to Ghana, and the Board agreed. This determination is unreviewable. Mensah attempts to frame some of his arguments as legal issues, claiming that the agency applied the wrong standard for assessing government acquiescence or ignored relevant evidence, <u>see</u> Petitioner's Pro Se Brief, at 26-29, but the agency applied the correct standard, acknowledging that acquiescence includes willful blindness, and considered the evidence of government corruption in Ghana. Accordingly, despite his

to believe" standard is inadequate to protect his due process rights. <u>See</u> Petitioner's Pro Se Brief, at 11, 19. <u>Vartelas</u>, which holds that § 1101(a)(13)(C)(v) does not apply to crimes that pre-date the Illegal Immigration Reform and Immigrant Responsibility Act, notes in the margin that, regarding § 1101(a)(13)(C), after the words "committed an offense," subparagraph (v)'s next words are "identified in section 1182(a)(2)." 132 S. Ct. at 1492 n.11. Section 1182(a)(2) refers to "any alien convicted of, or who admits having committed" a crime. <u>Id.</u> The Supreme Court explained, "[t]he entire § 1101(a)(13)(C)(v) phrase 'committed an offense identified in section 1182(a)(2),' on straightforward reading, appears to advert to a lawful permanent resident who has been convicted of an offense under § 1182(a)(2) (or admits to one)." <u>Id.</u> The Attorney General, in asking us to follow the Board's approach, does not argue that we should do so because <u>Doe</u> is in conflict with <u>Vartelas</u>. We note that the Fifth Circuit Court of Appeals concluded in <u>Munoz v. Holder</u>, 755 F.3d 366 (5th Cir. 2014), that our reading of § 1101(a)(13)(C)(v) does not comport with <u>Vartelas</u>, <u>id.</u> at 271, but that ultimately the result we reach in these cases -- that a returning lawful permanent resident with an outstanding arrest warrant could be paroled for criminal prosecution and subsequently charged with inadmissibility as an arriving alien -- is the same, <u>id.</u> at 271 & n.6.

11

attempt to frame his arguments in legal terms, his real challenge is to the agency's unreviewable factual determination that he did not establish a likelihood that he will be tortured upon his return to Ghana.

For the foregoing reasons, we will deny the petition for review.