# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-60037

United States Court of Appeals
Fifth Circuit

**FILED**
June 19, 2014

Lyle W. Cayce
Clerk

MARIA LUZ MUNOZ,

Petitioner,

v.

ERIC H. HOLDER, JR., U.S. ATTORNEY GENERAL,

Respondent.

Petition for Review of an Order of the
Board of Immigration Appeals

Before DAVIS, BARKSDALE, and ELROD, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

Petitioner Maria de la Luz Munoz, a lawful permanent resident, petitions for review of the Board of Immigration Appeals' (BIA) order finding her inadmissible for having committed a crime involving moral turpitude and thus ineligible for cancellation of removal. Because the Department of Homeland Security (DHS) may rely on subsequent convictions to meet the clear and convincing evidence standard in proving that a returning alien is applying for admission, we DENY relief.

No. 13-60037

I.

Munoz is a native of Mexico and has been a lawful permanent resident[1] of the United States since 1996. In November 2010, a Texas grand jury indicted her for assault and aggravated assault with a deadly weapon for an incident on June 2, 2010, where she pepper-sprayed a woman, apparently her husband's lover, and struck the woman with a club. In December 2010, Munoz left the United States to undergo gallstone surgery in Mexico. Upon her return to the United States following her gallstone surgery a few weeks later, border patrol agents in Laredo, Texas, discovered that she had an outstanding arrest warrant for assault and aggravated assault with a deadly weapon arising from that June 2010 incident, and arrested her.

Before Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act "a resident alien who once committed a crime of moral turpitude could travel abroad for short durations without jeopardizing his status as a lawful permanent resident." *Vartelas v. Holder*, 132 S. Ct. 1479, 1486 (2012). However, under the Illegal Immigration Reform and Immigrant Responsibility Act, "on return from foreign travel, such an alien is treated as a new arrival to our shores, and may be removed from the United States." *Id.* (citing 8 U.S.C. § 1101(a)(13)(C)(v); § 1182(a)(2)). Now lawful permanent residents returning to the United States, like Munoz, "may be required to seek an admission into the United States." *Id.* at 1484 (alteration and internal quotation marks omitted). "An alien seeking 'admission' to the United States is subject to various requirements, and cannot gain entry if she is deemed

---

[1] A lawful permanent resident includes any person not a citizen of the United States who is residing in the United States under legally recognized and lawfully recorded permanent residence as an immigrant. These persons are also known as "Permanent Resident Aliens," "Resident Alien Permit Holders," and "Green Card Holders."

'inadmissible' on any of the numerous grounds set out in the immigration statutes." *Id.* (citations omitted).

In February 2011, Munoz pleaded guilty to the charge of aggravated assault with a deadly weapon and no contest to the assault charge. In September 2011, the DHS issued a notice to appear charging Munoz with inadmissibility under 8 U.S.C. § 1182(a)(2)(A)(i)(I) as an alien who had been convicted of a crime involving moral turpitude. The notice to appear alleged that Munoz was a parolee "appl[ying] for admission" to the United States. On December 15, 2011, Munoz appeared before the immigration judge and admitted that she was not a United States citizen and that she had been convicted of aggravated assault with a deadly weapon in Dallas County, Texas. She denied, however, that she applied for admission to the United States in January 2011, and that she was paroled into the United States for criminal prosecution.[2]

To rebut Munoz's denial, the government submitted a copy of Munoz's Form I-94, showing that she was paroled into the United States for criminal prosecution in January 2011.[3] Munoz's counsel did not object to the admission of the Form I-94, or make any argument that the Form I-94 did not establish that she was paroled into the United States for criminal prosecution. The immigration judge indicated that he was going to sustain the charge and find that Munoz was subject to removal as an alien. The immigration judge held a

---

[2] This allegation was included in the notice to appear that the DHS sent to Munoz. In denying this allegation, Munoz argued that her conviction could not trigger removal proceedings against an alien whose last admission occurred more than five years before the commission of a crime involving moral turpitude.

[3] The Attorney General has the authority to parole, or temporarily allow, aliens inadmissible for visas or admission into the United States for specific reasons, as outlined in 8 U.S.C. § 1182. This includes paroling an alien into the United States for criminal prosecution for crimes involving moral turpitude. 8 U.S.C. § 1182(2)(A)(i)(I).

hearing on the merits of Munoz's request for cancellation. At the hearing, the immigration judge issued an oral decision finding Munoz removable as charged and ineligible for cancellation of removal based on an adverse credibility determination.

Munoz appealed to the BIA, arguing that she was not paroled into the United States and that, because she was a returning lawful permanent resident, her outstanding warrants were not sufficient evidence to regard her as an applicant for admission at her time of reentry in January 2011. Munoz argued that there was insufficient evidence in the record to support the finding that she was paroled into the United States in January 2011 because the Form I-94 was not in the record. The BIA affirmed the immigration judge's decision and held that the government had met its burden of proving by clear and convincing evidence that Munoz was properly regarded as seeking admission into the United States based on the government's evidence that Munoz pleaded guilty in February 2011 to having committed assault with a deadly weapon. The BIA further concluded that the immigration judge's finding that Munoz had been paroled into the United States was not clearly erroneous. This petition followed.

## II.

We have jurisdiction to review constitutional and legal challenges to an order of removal against a criminal alien. 8 U.S.C. § 1252(a)(2)(D). We may not review the order's factual findings. 8 U.S.C. § 1252(a)(2)(C).[4] We review

---

[4] Although Munoz argues that there is insufficient evidence in the record to support the finding that she was paroled into the United States in January 2011 because the Form I-94 is not in the record, we lack jurisdiction to review such factual claims. *See* 8 U.S.C. § 1252(a)(2)(C). Moreover, Munoz has stipulated that the copy of the form presented to the immigration judge by the government is the same as was before the immigration judge, and she concedes that when the immigration judge ordered her removal in February 2012, it had before it ample proof that she was inadmissible for having committed a crime involving moral turpitude. As a result, we do not consider Munoz's sufficiency challenge to the BIA's

No. 13-60037

the BIA's decision and consider the underlying decision of the immigration judge only if it influenced the determination of the BIA. *Ontunez–Tursios v. Ashcroft*, 303 F.3d 341, 348 (5th Cir. 2002). Where, as here, the BIA interpreted an unambiguous statutory provision, we review the BIA's legal conclusions *de novo. See Orellana–Monson v. Holder*, 685 F.3d 511, 517 (5th Cir. 2012). The government must present clear and convincing evidence that an alien has been convicted of a crime involving moral turpitude. *See Vartelas*, 132 S. Ct. at 1492; *Matter of Rivens*, 25 I. & N. Dec. 623 (BIA 2011) (holding that the DHS bears the burden of proving by clear and convincing evidence that a returning lawful permanent resident falls within one or more of the six enumerated provisions in 8 U.S.C. § 1101(a)(13)(C)).

### III.

We begin with the parole statute, 8 U.S.C. § 1182(d)(5)(A), which provides that "[t]he Attorney General may . . . parole into the United States . . . any alien applying for admission to the United States." Ordinarily this provision does not apply to lawful permanent residents, because they are not "regarded as seeking an admission into the United States for purposes of the immigration laws." 8 U.S.C. § 1101(a)(13)(C). The statute provides, however, six exceptions in which a lawful permanent resident is considered an applicant for admission to the United States. *Id.* One such exception applies when an alien "has committed an offense identified in section 1182(a)(2)." 8 U.S.C. § 1101(a)(13)(C)(v). Section 1182(a)(2) includes "any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of . . . a crime involving moral turpitude." 8 U.S.C. § 1182(a)(2)(A)(i)(I). The record here is clear that Munoz pleaded guilty to

---

determination that she was paroled in the United States for criminal prosecution in January 2011.

aggravated assault with a deadly weapon in February 2011, after she entered the United States and was issued a Form I-94 in January 2011. It is also undisputed that aggravated assault with a deadly weapon qualifies as a crime involving moral turpitude as defined in 8 U.S.C. § 1182(a)(2)(A)(i)(I).

The issue before us is whether Munoz's subsequent conviction of this crime involving moral turpitude can be used to determine whether she was an applicant for admission when she reentered the United States. Munoz argues that the determination that she was an applicant for admission had to be made based on clear and convincing evidence *at the time* of her reentry, and contends that because she had not yet been convicted, the government could not meet its evidentiary burden. In contrast, the BIA's order reasons that Munoz's subsequent guilty plea can be used as evidence that she committed a crime involving moral turpitude, and that she was therefore applying for admission to the United States when she sought reentry. We agree.

Read together, the applicable statutory provisions show that the BIA's order is correct in its assessment that the determination that a lawful permanent resident is "applying for admission" need not be made at the time of reentry.[5] Section 1101(a)(13)(C)(v) provides that a lawful permanent resident is "applying for admission" if the lawful permanent resident "has committed an offense identified in section 1182(a)(2) of this title." Section 1182(a)(2)(A)(i)(I) includes a lawful permanent resident "convicted of, or who admits having committed, or who admits committing acts" of a crime involving moral turpitude. Nothing in the plain language of these provisions limits the timing of the determination. Here, Munoz had already committed

---

[5] Although the government also argued that the BIA's interpretation is entitled to deference, we do not reach that issue. The statutory provisions here are unambiguous. *See Asadi v. G.E. Energy (USA), L.L.C.*, 720 F.3d 620, 630 (5th Cir. 2013) (declining to defer to the SEC's interpretation of an unambiguous statutory provision).

the act when she applied for reentry, and the government may use her subsequent conviction of that same act as clear and convincing evidence that she had been convicted of a crime involving moral turpitude, and was thus an applicant for admission.   *See Vartelas*, 132 S. Ct. at 1492 (noting that ordinarily the border patrol must determine "whether there is clear and convincing evidence that an alien has committed a qualifying crime" for parole purposes); *Matter of Rivens*, 25 I. & N. Dec. at 623 (holding that the DHS bears the burden of proving by clear and convincing evidence that a returning lawful permanent resident falls within one or more of the six enumerated provisions in 8 U.S.C. § 1101(a)(13)(C)).

A review of the case law in our sister circuits indicates that only the Third Circuit has had occasion to consider this particular issue.  In *Doe v. Attorney General of the United States*, the Third Circuit concluded that the determination that an alien was an applicant for admission must be made at the time of reentry, but ultimately reached the same result as we do here, that a returning lawful permanent resident with an outstanding arrest warrant could be paroled for criminal prosecution and subsequently charged with inadmissibility as an arriving alien.  659 F.3d 266, 272–73 (3d Cir. 2011).[6]  The Third Circuit read the statute to mean the DHS must prove that the alien "has committed" rather than was "convicted" of a crime involving moral turpitude because § 1101(a)(13)(C)(v) uses the words "has committed."  *Id.* at 270.  This reading, however, ignores the fact that § 1101(a)(13)(C)(v) refers to § 1182(a)(2)(A)(i)(I), which clearly states that the alien had to have been

---

[6] Likewise, even if we were to follow the Third Circuit's approach here, we would reach the same result.  There was sufficient evidence for the DHS to find that Munoz had committed a crime involving moral turpitude at the time of her admission.

"convicted of, or who admits having committed, or who admits committing acts" of a crime involving moral turpitude.

Our reading comports with the Supreme Court's recent discussion of § 1101(a)(13)(C)(v). In *Vartelas*, the Supreme Court noted that after the words "committed an offense," § 1101(a)(13)(C)(v)'s next words are "identified in section 1182(a)(2)." 132 S. Ct. at 1492 n.11.[7]  Section 1182(a)(2) refers to "any alien *convicted of*, or who admits having committed" a crime involving moral turpitude.  *Id.*  As the Supreme Court explained, "[t]he entire § 1101(a)(13)(C)(v) phrase 'committed an offense identified in section 1182(a)(2),' on straightforward reading, appears to advert to a lawful permanent resident who has been convicted of an offense under § 1182(a)(2) (or admits to one)." *Id.*[8]  Applying the same "straightforward reading" to the issue before use, we conclude that the determination does not have to be made at the time of entry.

Holding that subsequent convictions can be used to determine whether a lawful permanent resident was an applicant for admission not only comports with the language of the statutory provisions; it also makes good practical sense.  After all, the border patrol must make quick judgments on the spot, and it would be impracticable to require the border patrol agents to gather and consider all the evidence and reach the same judgment that the immigration judge makes after more thorough consideration.  As the BIA has explained, at

---

[7] The Court held in *Vartelas* that § 1101(a)(13)(C) cannot be applied retroactively to a lawful permanent resident who committed the relevant crime involving moral turpitude prior to the provision's effective date. *Id.* at 1483–84.

[8] In *Gonzaga–Ortega v. Holder*, the Ninth Circuit interpreted a different subsection of the same statutory provision, § 1101(a)(13)(C)(iii).  736 F.3d 795, 802 (9th Cir. 2012) (holding that because subsection (iii) uses the words "has engaged in illegal activity," rather than "convicted," the decision of admission is made "at that time, on the spot, by immigration officers at the border").

the port of entry the "DHS is rightly devoting its resources to carrying out its law enforcement responsibilities involving control and flow of aliens into this country, rather than ensuring that it already has enough evidence to sustain its ultimate burden of proof in removal proceedings that subsequently may be instituted and litigated." *Matter of Valenzuela–Felix*, 26 I. & N. Dec. 53, 64 (BIA 2012).

Moreover, both history and practice demonstrate that the primary purpose of these statutory provisions was to enable parole of aliens for the purpose of prosecution. *See Matter of K-*, 9 I. & N. Dec. 143, 157 (BIA 1959) ("Congress meant for parole to be used for purposes of prosecution."). In addition, the Attorney General has decided that "admission" is continuing, rather than an act limited to the exact time that the alien reenters the United States. *See Matter of Valenzuela–Felix*, 26 I. & N. Dec. at 56. In *Matter of K-*, the BIA reached the conclusion that Munoz argues for here, and determined that the eligibility of a returning lawful permanent resident must be determined as of the time of the initial application, or at the border, and that the results of any subsequent conviction while on parole did not affect the alien's eligibility for admission. 9 I. & N. Dec. at 150–51.

The Attorney General reversed the BIA's decision in *Matter of K-*, and held that it was proper for immigration authorities to parole the returning lawful permanent resident for prosecution based on evidence that he had already committed a crime involving moral turpitude at the time he sought to be admitted at the border and to then make the ultimate determination regarding the lawful permanent resident's admissibility in a post-conviction exclusion proceeding. 26 I. & N. Dec. at 59. As the BIA explained in *Matter of Valenzuela–Felix*, "[s]ubsequent Board decisions have cited *Matter of K-* for the proposition that an application for admission is a continuing one and that admissibility is determined on the basis of the law and facts existing at the

time the application is finally considered." 26 I. & N. Dec. at 59–60 (citing *Matter of Kazemi*, 19 I. & N. Dec. 49, 51 (BIA 1984)). As the *Valenzuela* majority explained,

> the Attorney General and [the] Board have consistently treated an application for admission as a continuing one and have held that, ultimately, admissibility is authoritatively determined on the basis of the law and facts existing, not at the time the alien first presents himself at the port of entry, but at the time the application for admission is finally considered during the proceedings before the Immigration Judge.

*Id.* at 56.

## IV.

The government may rely on subsequent convictions to meet the clear and convincing evidence standard in proving that a lawful permanent resident is applying for admission. The government did so by providing evidence that Munoz had been convicted of a crime involving moral turpitude for an act that she committed prior to her application for admission. We therefore DENY relief.