**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

ROGELIO VAZQUEZ ROMERO,
*Petitioner*,

v.

MERRICK B. GARLAND, Attorney General,
*Respondent.*

No. 15-72947

Agency No.
A091-783-214

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted May 22, 2020
San Francisco, California

Filed May 28, 2021

Before: Marsha S. Berzon and Sandra S. Ikuta, Circuit
Judges, and Ivan L.R. Lemelle,[*] District Judge.

Opinion by Judge Ikuta

---

[*] The Honorable Ivan L.R. Lemelle, United States District Judge for the Eastern District of Louisiana, sitting by designation.

## SUMMARY[**]

### Immigration

Denying Rogelio Vazquez Romero's petition for review of a decision of the Board of Immigration Appeals, the panel held that the government may parole a returning lawful permanent resident (LPR) into the United States for prosecution without proving at the border that the LPR was seeking an admission under 8 U.S.C. § 1101(a)(13)(C), when such a determination depends on facts that are not practically ascertainable at the border; but at subsequent removal proceedings, the government must prove by clear and convincing evidence that the returning LPR falls within one of the exceptions under § 1101(a)(13)(C).

An alien attempting to reenter the United States is generally deemed to be seeking an admission and is thus subject to charges of inadmissibility. However, under § 1101(a)(13)(C), a returning LPR shall not be regarded as seeking an admission unless one of six exceptions applies. One such exception applies if the LPR has committed a crime involving moral turpitude.

Vazquez Romero, an LPR, traveled to Mexico in 2018. Upon his return, Customs and Border Protection (CBP) discovered that he had an outstanding warrant that was possibly for a crime involving moral turpitude and therefore paroled him into the country under 8 U.S.C. § 1182(d)(5) for prosecution. Section 1182(d)(5) gives the Attorney General

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the discretion to parole into the United States any alien applying for admission, and a grant of parole does not affect the alien's immigration status.

After Vazquez Romero pleaded guilty to petty theft, the government commenced removal proceedings, charging him with inadmissibility based on a crime involving moral turpitude. Vazquez Romero moved to terminate proceedings, arguing that he should not have been charged as an inadmissible alien. The BIA rejected this contention, relying on its published decision in *Matter of Valenzuela-Felix*, 26 I. & N. Dec. 53 (BIA 2012), which held that, when the government paroles a returning LPR into the country for prosecution, it need not have all the evidence to sustain its burden of proving that the alien is an applicant for admission, but may ordinarily rely on the results of a subsequent prosecution to meet that burden in later removal proceedings.

The panel explained that the question at issue was whether the government must carry its burden of proving that a returning LPR meets an exception under § 1101(a)(13)(C) (and therefore may be regarded as seeking an admission), before it can parole the returning LPR into the United States under § 1182(d)(5) (albeit with LPR status intact). Applying the *Chevron* framework, the panel first concluded that Congress has not spoken to this issue.

The panel next concluded that the BIA reasonably interpreted § 1182(d)(5) and § 1101(a)(13)(C) as allowing the government to exercise its discretion to parole a returning LPR into the United States for prosecution before satisfying its burden of proof. Given that the government must prove by clear and convincing evidence that a returning LPR is seeking an admission, the panel explained it would be impractical and

inefficient to require it to meet this burden at the border. Moreover, the panel explained that the text of § 1101(a)(13)(C) does not preclude a delayed determination of whether a returning LPR meets the exception, and that second-guessing whether immigration authorities properly paroled a returning LPR would interfere with the government's exercise of its parole discretion. The panel further explained that the BIA's conclusion that it lacked authority to review the government's discretionary decision to parole a returning LPR into the United States is consistent with congressional intent to shield discretionary decisions from judicial review. Finally, the panel observed that the Fifth Circuit had already adopted the BIA's interpretation.

The panel also deferred to the BIA and joined the Fifth Circuit in holding that, to meet its burden of proving that a returning LPR is seeking an admission, the government may rely on a conviction obtained after the LPR is paroled into the United States but before the LPR is placed in removal proceedings. The panel agreed with the Fifth Circuit that the rule makes good practical sense.

Applying this framework here, the panel concluded that the government properly relied on Vazquez Romero's conviction to carry its burden of proving by clear and convincing evidence that he could be regarded as an alien seeking an admission into the United States, pursuant to § 1101(a)(13)(C)(v), and that he was therefore properly subjected to a charge of inadmissibility.

## COUNSEL

Bria A. Coleman (argued) and Emma D. McBride (argued), Certified Law Students; Kari E. Hong (argued), Associate Professor;  Boston College Law School, Ninth Circuit Appellate Project, Newton, Massachusetts; Juliana Garcia and Raul Gomez, Gomez & Associates, Los Angeles, California; for Petitioner.

Robert D. Tennyson (argued), Trial Attorney; Jesse M. Bless and Jeffrey R. Leist, Senior Litigation Counsel; Anthony C. Payne, Assistant Director; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

## OPINION

IKUTA, Circuit Judge:

The Immigration and Naturalization Act (INA) provides that "[t]he Attorney General may . . . in his discretion parole into the United States . . . any alien applying for admission to the United States." 8 U.S.C. § 1182(d)(5)(A).  The INA also provides that a lawful permanent resident (LPR) is not considered to be "seeking an admission into the United States" unless one of six exceptions applies. *Id.* § 1101(a)(13)(C).  One exception is for an LPR who has committed a crime involving moral turpitude. *Id.* § 1182(a)(2)(A)(i)(I).  Thus, an LPR who reenters the country after a trip abroad is considered to be seeking an admission into the United States if he has committed a crime involving moral turpitude.

This case raises the question whether the government must carry its burden of proving that a returning LPR meets one of the six exceptions under § 1101(a)(13)(C) before it paroles that LPR into the United States under § 1182(d)(5). Deferring to a precedential opinion issued by the Board of Immigration Appeals (BIA), *see Matter of Valenzuela-Felix*, 26 I. & N. Dec. 53 (BIA 2012), we hold that the government may exercise its discretion to parole a returning LPR into the United States for prosecution without carrying its burden of proving that the LPR falls within one of the six exceptions. The government must, however, carry its burden of proof in subsequent removal proceedings if any ensue.

I

We begin with some background.  Aliens who have been lawfully admitted to the country generally receive more protection under immigration law than aliens who are seeking admission to the United States.[1]  In removal proceedings, for instance, an alien who is an applicant for admission has the burden of proving that he "is clearly and beyond doubt entitled to be admitted and is not inadmissible" under § 1182. 8 U.S.C. § 1229a(c)(2)(A).  But if the alien has already been lawfully admitted to the United States, the burden shifts to the government, which must establish by clear and convincing evidence that the alien is deportable.  *See id.* § 1229a(c)(3)(A); *Gonzaga-Ortega v. Holder*, 736 F.3d 795, 802 & n.2 (9th Cir. 2013).  Although the removal procedure is the same, "the list of criminal offenses that subject aliens to exclusion remains separate from the list of offenses that render an alien deportable."  *Vartelas v. Holder*, 566 U.S.

---

[1] For purposes of the INA, "[t]he term 'alien' means any person not a citizen or national of the United States."  8 U.S.C. § 1101(a)(3).

257, 263 n.3 (2012). For instance, "although a single crime involving moral turpitude may render an alien inadmissible, it would not render her deportable." *Id.* (first citing 8 U.S.C. § 1182(a)(2), which lists excludable crimes; then citing 8 U.S.C. § 1227(a)(2), which lists deportable crimes).

An alien who has traveled abroad and seeks to reenter the country upon return is generally deemed to be seeking an admission into the United States, and therefore is subject to a charge of being inadmissible. There is an exception, however, when the returning alien is an LPR. Immigration law provides that "[a]n alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws unless" one of six exceptions applies. 8 U.S.C. § 1101(a)(13)(C).[2] One such exception applies if the

---

[2] 8 U.S.C. § 1101(a)(13)(C) provides:

(C) An alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws unless the alien—

(i) has abandoned or relinquished that status,

(ii) has been absent from the United States for a continuous period in excess of 180 days,

(iii) has engaged in illegal activity after having departed the United States,

(iv) has departed from the United States while under legal process seeking removal of the alien from the United States, including removal proceedings under this chapter and extradition proceedings,

returning LPR "has committed an offense identified in section 1182(a)(2)." *Id*. § 1101(a)(13)(C)(v). One of the offenses enumerated in § 1182(a)(2) is a crime involving moral turpitude. *Id.* § 1182(a)(2)(A)(i)(I). Thus, an LPR who has committed a crime involving moral turpitude for purposes of § 1182(a)(2)(A)(i)(I), and seeks to reenter the country, is "regarded as seeking an admission into the United States for purposes of the immigration laws." *Id.* § 1101(a)(13)(C).

Immigration authorities at ports of entry have historically exercised the authority to parole aliens into the United States for various limited purposes, including for prosecution. *See, e.g.*, *Kaplan v. Tod*, 267 U.S. 228, 229 (1925); *Ekiu v. United States*, 142 U.S. 651, 661 (1892). For example, parole is "a device through which needless confinement is avoided while administrative proceedings are conducted." *Leng May Ma v. Barber*, 357 U.S. 185, 190 (1958). The government's historical parole authority has been codified in § 1182(d)(5), which gives the Attorney General the discretion to parole into the United States "any alien applying for admission to the United States."[3] 8 U.S.C. § 1182(d)(5)(A).

---

(v)  has committed an offense identified in section 1182(a)(2) of this title, unless since such offense the alien has been granted relief under section 1182(h) or 1229b(a) of this title, or

(vi)  is attempting to enter at a time or place other than as designated by immigration officers or has not been admitted to the United States after inspection and authorization by an immigration officer.

[3] The entire provision provides:

The Attorney General may, except as provided in subparagraph (B) or in section 1184(f) of this title, in

The parole of an alien into the United States does not affect the alien's immigration status. *See Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 213 (1953); *Kaplan*, 267 U.S. at 230; *Ekiu*, 142 U.S. at 661. Aliens "paroled elsewhere in the country for years pending removal are treated for due process purposes as if stopped at the border." *Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959, 1982 (2020) (citation omitted) (cleaned up). This means that LPRs paroled into the United States retain their immigration status until "entry of a final administrative order" of removal. *Matter of Lok*, 18 I. & N. Dec. 101, 105 (BIA 1981); *see also Valenzuela-Felix*, 26 I. & N. Dec. at 61 n.9.

## II

Vazquez Romero is a native and citizen of Mexico who was granted LPR status in 1990. Vazquez Romero has been convicted of several  crimes since receiving LPR status. In 2004, he was convicted, under section 11350(a) of the California Health & Safety Code, of possessing cocaine. He

---

his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C § 1182(d)(5)(A).

was sentenced to more than one year of incarceration. In 2005, he was convicted of petty theft under section 484 of the California Penal Code, and was subject to enhanced penalties reserved for repeat theft offenders under section 666 of the California Penal Code. Later that year, he was convicted of second-degree burglary in violation of section 460(b) of the California Penal Code.

In August 2008, Vazquez Romero was charged a second time for petty theft under section 484 of the California Penal Code. His arraignment was scheduled for August 22, 2008. When he failed to appear, the sheriff's department issued a warrant for his arrest.

While the warrant was outstanding, Vazquez Romero traveled to Mexico. On December 3, 2008, he flew back to the United States and landed at Los Angeles International Airport (LAX), where he presented himself for inspection to an agent from the U.S. Customs and Border Protection (CBP). The CBP directed him to secondary inspection, where it discovered his outstanding warrant. Because the warrant was possibly for a crime involving moral turpitude under 8 U.S.C. § 1182(a)(2)(A)(i)(I), the CBP paroled Vazquez Romero into the country and handed him over to California authorities for prosecution.

Vazquez Romero later pleaded guilty to committing petty theft in violation of section 484 of the California Penal Code. He was sentenced to a three-year term of probation conditioned upon his serving 365 days in county jail.

While Vazquez Romero was serving his jail sentence, the government commenced removal proceedings. The government alleged that Vazquez Romero was seeking an

admission into the United States when he returned from his trip to Mexico because he had committed a crime involving moral turpitude under § 1182(a)(2)(A)(i)(I). Vazquez Romero moved to terminate the removal proceedings, arguing that he should not have been charged as an inadmissible alien. The IJ denied Vazquez Romero's motion to terminate. The BIA dismissed Vazquez Romero's appeal, holding that under *Valenzuela-Felix*, 26 I. & N. Dec. at 53, when the government paroles a returning LPR into the United States for prosecution, it "need not have all the evidence to sustain its burden of proving that the alien is an applicant for admission, but may ordinarily rely on the results of a subsequent prosecution to meet that burden in later removal proceedings."

On appeal, Vazquez Romero argues that because he was a returning LPR, the government could not parole him into the country rather than allowing him to enter the country as a returning LPR unless it first met its burden of proving that he was "an alien seeking an admission" under § 1101(a)(13)(C). To carry that burden, Vazquez Romero argues, the government had to prove that he had committed a crime involving moral turpitude for purposes of § 1182(a)(2)(A)(i)(1). Because the only evidence available at the border was his outstanding warrant, which, according to Vazquez Romero, was insufficient to prove that he had committed a crime involving moral turpitude, the government should have treated him as a returning LPR subject to grounds of deportability rather than inadmissibility.

## III

We have jurisdiction to review the BIA's final order of removal under 8 U.S.C. § 1252(a)(1). We review questions

of law and constitutional claims de novo.  *See Negrete-Ramirez v. Holder*, 741 F.3d 1047, 1050 (9th Cir. 2014); *Liu v. Holder*, 640 F.3d 918, 930 (9th Cir. 2011).

A

We begin by considering the government's obligation at the border when it paroles a returning LPR into the country. Under § 1182(d)(5), the "Attorney General may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States."  8 U.S.C. § 1182(d)(5)(A).

In *Valenzuela-Felix*, a precedential opinion, the BIA considered the question whether the government must prove that an alien who is a returning LPR meets one of the exceptions in § 1101(a)(13)(C) at the border before paroling the alien into the United States.  26 I. & N. Dec. at 54. *Valenzuela-Felix* involved an LPR who had been federally indicted on charges of bulk cash smuggling, which the BIA held to be a crime involving moral turpitude.  *Id.* at 53.  A warrant was issued for the LPR's arrest.  *See id.* at 54.  The LPR subsequently left the country and, when he attempted to reenter, was paroled into the United States for prosecution and then tried for and convicted of the cash smuggling offense.  *Id.* at 53.  In subsequent removal proceedings, the LPR was charged with grounds of inadmissibility.  *Id.* at 53–54.  The IJ terminated the proceedings because the government had failed to prove at the time the LPR sought to reenter the United States that the LPR was an alien seeking admission.  *Id.* at 54.

The BIA reversed.  It first reaffirmed its prior ruling, *see Matter of Rivens*, 25 I. & N. Dec. 623, 625 (BIA 2011), that the government must prove by clear and convincing evidence that a returning LPR meets one of the exceptions in § 1101(a)(13)(C)(v).**[4]**  *Id.*  Then, noting that *Rivens* did not address "the *time* at which the determination must be made by clear and convincing evidence," *id.* at 54 (emphasis in original), *Valenzuela-Felix* held that the government does not have to carry this burden at the border.  *Id.* at 65.  As the BIA explained, the government does not have to meet "a threshold standard before it may parole a returning lawful permanent resident into the United States for prosecution," *id.* at 62, or "possess all of the evidence pertinent to sustaining its burden at the time the lawful permanent resident first seeks to come back into the United States," *id.* at 64.  Rather, the government must carry its burden of proof in subsequent removal proceedings.  *Id.* at 64.  In other words, admissibility is "authoritatively determined" not when "the alien first presents himself at the port of entry" but rather when "the application for admission is finally considered during the proceedings before the Immigration Judge." *Id.* at 56.  Thus, according to *Valenzuela-Felix*, the government may "treat[] a returning [LPR] as an arriving alien" and parole the returning LPR into the United States for prosecution "until an ultimate determination is made by an Immigration Judge, in any removal proceedings the DHS may initiate, whether one or more of the [§ 1101(a)(13)(C)] criteria, in fact, pertain." *Id.* at 57–58.

In reaching this conclusion, *Valenzuela-Felix* relied on the longstanding principle that the BIA lacks authority "to

---

**[4]** We adopted the clear and convincing evidence standard in *Gonzaga-Ortega*, 736 F.3d at 802.

oversee and regulate the DHS's exercise of its law enforcement duties and prerogatives at the ports of entry." *Id.* at 62. At ports of entry, the parole power belongs to immigration authorities, not the BIA. *See id.* at 63. The BIA could "discern no indication that when Congress enacted [§ 1101(a)(13)(C)], it intended to alter the well-established restrictions on [the BIA's] ability to intrude into parole determinations." *Id.* at 63.

*Valenzuela-Felix* also explained that the Third Circuit was mistaken when it took a contrary approach in *Doe v. Attorney General of the United States*, 659 F.3d 266 (3rd Cir. 2011). *Id.* at 61–62. *Doe* held, in the course of upholding a removal order for an LPR paroled into the United States, that the government cannot parole a returning LPR into the United States unless there is probable cause to believe that the alien has committed an offense enumerated in § 1182(a)(2). 659 F.3d at 272. *Valenzuela Felix* disagreed with this approach. It explained that requiring the government to prove it had met a "threshold test for parole" within the context of a removal proceeding was unprecedented and would "create tension with principles" relating to the BIA's authority to review the government's exercise of prosecutorial discretion. *Valenzuela-Felix*, 26 I. & N. Dec. at 62. The BIA also noted that *Doe* was "based in part on an apparent misapprehension" that treating a returning LPR as an applicant for admission would strip the alien of LPR status. *Id.* at 61 n.9. The BIA explained that contrary to *Doe*'s erroneous view, "treating a returning lawful permanent resident as an applicant for admission, paroling such an alien, or even convicting such an alien of a crime identified in section [1182(a)(2)] does not remove the alien's status as a lawful permanent resident." *Id.* (citing *Matter of Lok*, 18 I. & N. Dec. at 101). An LPR's status remains unchanged until a final determination under

§ 1101(a)(13)(C) is made in removal proceedings. *See id.* In sum, the BIA held that there is "no need to create a two-stage process whereby first probable cause, and later clear and convincing evidence, of [an LPR's] commission of a turpitudinous crime must be demonstrated." *Id.* at 62 n.10.**[5]**

B

"We apply the *Chevron* framework where, as here, there is 'binding agency precedent on point' in the form of a published BIA opinion." *Valenzuela Gallardo v. Lynch*, 818 F.3d 808, 815 (9th Cir. 2016) (citation omitted). We begin by determining, using traditional tools of statutory construction, whether Congress has "directly spoken to the precise question at issue." *Perez-Guzman v. Lynch*, 835 F.3d 1066, 1073 (9th Cir. 2016) (citation omitted). If the statute is silent or ambiguous with respect to that specific issue, then "we may consider the responsible agency's interpretation of the statutory scheme." *Id.* If the agency's interpretation is reasonable, "*Chevron* requires a federal court to accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation." *Id.* (quoting *Brand X*, 545 U.S. at 980). In considering whether an agency interpretation is reasonable, we may look at the statutory language in context, as well as to decisions by other circuits. *See*

---

**[5]** The Third Circuit adopted the "probable cause" standard before *Matter of Rivens* determined that the government must prove by clear and convincing evidence that a returning LPR is an alien seeking an admission under § 1101(a)(13)(C). The Third Circuit's adoption of the probable-cause standard was therefore superseded by *Rivens* and *Valenzuela-Felix*. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005)).

*Garfias-Rodriguez v. Holder*, 702 F.3d 504, 513–14 (9th Cir. 2012).

Here, the precise question at issue is whether the government must carry its burden of proving that a returning LPR meets an exception under § 1101(a)(13)(C) (and therefore may be regarded as seeking an admission into the United States), before it can parole the returning LPR into the United States under § 1182(d)(5) (albeit with LPR status intact). We first conclude that Congress has not spoken to this issue. Section 1182(d)(5) states that the parole decision with regard to aliens seeking admission is at the government's discretion, but does not address when the alien's admissibility should be decided. *See* 8 U.S.C. § 1182(d)(5)(A). Nor does § 1101(a)(13)(C) address when the government must prove that an LPR qualifies as an alien seeking an admission. "*Chevron*'s premise is that it is for agencies, not courts, to fill statutory gaps." *Brand X*, 545 U.S. at 982. Thus, we turn to whether the BIA permissibly filled this statutory gap in *Valenzuela-Felix*.

Reading § 1182(d)(5) and § 1101(a)(13)(C) together, we conclude that the BIA could reasonably interpret the statutes as allowing the government to exercise its discretion to parole a returning LPR into the United States for prosecution before satisfying its burden of proof. We rely on the language of both § 1182(d)(5)(A) and § 1101(a)(13)(C). Section 1182(d)(5)(A) gives the government broad parole discretion, without mentioning any threshold standard that the government must meet or the timing of when a decision as to admissibility must be made. *See* 8 U.S.C. § 1182(d)(5)(A). Section 1101(a)(13)(C), in turn, provides limitations on the scope of the Attorney General's discretion, but also does not set any time when a decision must be made.

Given that the government must prove by clear and convincing evidence that a returning LPR is seeking an admission into the United States under § 1101(a)(13)(C), it would be impractical and inefficient to require it to meet this burden at the border. *Cf. Munoz v. Holder*, 755 F.3d 366, 372 (5th Cir. 2014). As the BIA noted, at the border the government "is rightly devoting its resources to carrying out its law enforcement responsibilities involving control of the flow of aliens into this country, rather than to ensuring that it already has enough evidence to sustain its ultimate burden of proof." *Valenzuela Felix*, 26 I. & N. Dec. at 64. We have previously acknowledged that immigration officers must make quick judgments at the border, including whether a returning LPR should be treated as an applicant for admission. *Gonzaga-Ortega*, 736 F.3d at 802.

The answer to the question whether a returning LPR meets one of the six exceptions in 8 U.S.C. § 1101(a)(13)(C) may not be self-evident, because the pertinent facts may not be practically ascertainable. Section 1101(a)(13)(C)(v) applies when an LPR at the border "has committed an offense identified in section 1182(a)(2)." 8 U.S.C. § 1101(a)(13)(C)(v). Where the LPR has not yet been convicted and has not admitted to committing such an offense, the answer to the relevant question will most often be resolved in a prosecution that has not yet taken place. The text of § 1101(a)(13)(C)(v) therefore does not preclude a delayed determination of whether a returning LPR meets the statutory exception.

Where immigration officers are not able to carry their burden of proof at the border, exercise of their discretion under the parole statute may be a sensible solution. Given Congress's grant of discretion to the government in

§ 1182(d)(5), the government may exercise its parole authority to permit an admissibility determination to be made after a criminal prosecution. *See Valenzuela-Felix*, 26 I. & N. Dec. at 64. Second-guessing whether the immigration authorities properly paroled a returning LPR into the country would entail not only scrutinizing immigration authorities' evidence at the border but also interfering with the government's exercise of its parole discretion. *Id.* at 62–63.

The BIA's interpretation of § 1182(d)(5) is consistent with Congress's expressed intent in other portions of the INA. Specifically, in the same subchapter containing § 1182(d)(5), Congress expressed its intent to shield the Attorney General's discretionary decisions from judicial review. *See* 8 U.S.C. § 1252(a)(2)(B). Most pertinent here, 8 U.S.C. § 1252(a)(2)(B)(ii) provides that with certain exceptions, "no court shall have jurisdiction to review" any "decision or action of the Attorney General . . . the authority for which is specified under this subchapter to be in the discretion of the Attorney General." We have previously concluded that the jurisdiction-stripping provision of § 1252(a)(2)(B)(ii) applies to discretionary parole decisions under § 1182(d)(5). *See Hasan v. Chertoff*, 593 F.3d 785, 790 (9th Cir. 2010). Accordingly, the BIA's conclusion that it lacked authority to review the government's discretionary decision to parole a returning LPR into the United States in this case is consistent with congressional intent.

Finally, in determining whether an agency's interpretation is reasonable, we may consider the views of our sister circuits. *See Garfias-Rodriguez*, 702 F.3d at 513. *Valenzuela-Felix*'s approach has already been adopted by the Fifth Circuit. *See Munoz*, 755 F.3d at 372. In *Munoz*, an LPR committed assault and aggravated assault with a deadly

weapon, traveled to Mexico for surgery, and then returned to the United States. *Id.* at 368. When the LPR tried to reenter the United States, the CBP determined that the LPR had an outstanding warrant for the assault charges. *Id.* The CBP arrested the LPR at the border and paroled her into the United States, where she subsequently pleaded guilty to one of the charges. *Id.* at 368. The government later issued a notice to appear charging the LPR as an alien applying for admission who had been convicted of a crime involving moral turpitude. *Id.* The LPR argued, among other things, that the CBP had to prove by clear and convincing evidence at the border that she was an applicant for admission when she sought to reenter the country from Mexico. *Id.* at 369. The Fifth Circuit rejected this argument and held that the government could meet its burden in subsequent removal proceedings. *Id.* at 370. The Fifth Circuit reasoned that the "border patrol must make quick judgments on the spot" and that it would be "impracticable to require the border patrol agents to gather and consider all the evidence and reach the same judgment that the immigration judge makes after more thorough consideration." *Id.* at 371.

We therefore conclude that *Valenzuela-Felix* offered a permissible interpretation of § 1182(d)(5) and § 1101(a)(13)(C)(v), read together. *See Garfias-Rodriguez*, 702 F.3d at 514. Deferring to that interpretation, we hold that the government may parole a returning LPR into the United States for prosecution under § 1182(d)(5) without proving at the border that the LPR falls within an exception under § 1101(a)(13)(C), when such a determination depends on facts that are not practically ascertainable at the border. But at subsequent removal proceedings, the government must prove by clear and convincing evidence that the returning

LPR was seeking an admission into the United States under § 1101(a)(13)(C).

Vazquez Romero argues that we should not defer to the BIA's interpretation, because it deprives LPRs of due process at the border. We reject this argument. Due process is violated when there is a "deprivation of a constitutionally protected liberty or property interest and denial of adequate procedural protection." *Krainski v. Nevada ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 970 (9th Cir. 2010). Congress has not mandated any procedure at the border for determining the applicability of the exceptions under § 1101(a)(13)(C), but has given the Attorney General discretion to exercise broad parole authority under § 1182(d)(5). Therefore, because the parole of aliens into the United States does not affect the aliens' immigration status, aliens are not deprived of any right to have their status determined at the border. Although the Supreme Court has held that LPRs are "entitled to a fair hearing when threatened with deportation," *Landon v. Plasencia*, 459 U.S. 21, 32 (1982), it has not held they are entitled to a hearing at the moment they seek to enter the country.[6] Moreover, a returning LPR who is paroled into the United States receives full procedural protections before a final determination under § 1101(a)(13)(C) is made in subsequent removal proceedings. At an LPR's removal proceeding, the government must carry its burden of proving by clear and convincing evidence that the LPR is an alien seeking admission who is therefore subject to a charge of inadmissibility. If the government

---

[6] Agency regulations also do not grant an alien the right to have an admission determination made at the border; to the contrary, they expressly permit delay of the decision through "deferred inspection." *See* 8 C.F.R. § 1235.2.

cannot carry its burden, then it will have to prove grounds of deportability. An LPR does not lose any rights at subsequent removal proceedings by being paroled into the United States rather than being treated as a returning LPR at the border.

Vazquez Romero also argues that the BIA's interpretation of § 1182(d)(5) is inconsistent with *Vartelas*. Again, we disagree. *Vartelas* involved an LPR who pleaded guilty to a felony crime involving moral turpitude in 1994 (two years before § 1101(a)(13)(C) was enacted) and then traveled abroad for one week in 2003 (seven years after § 1101(a)(13)(C) was enacted). 566 U.S. at 260. When the LPR sought reentry into the United States, immigration authorities became aware of his conviction for a crime involving moral turpitude, treated him as an inadmissible alien, and placed him in removal proceedings. *Id.* The Supreme Court addressed a narrow question: "As to a lawful permanent resident convicted of a crime before the effective date of IIRIRA, which regime governs, the one in force at the time of the conviction, or IIRIRA?" *Id.* at 261. The Court held that because IIRIRA "attached a new disability (denial of reentry) in respect to past events ([the alien's] pre-IIRIRA offense, plea, and conviction)," the "deeply rooted presumption against retroactive legislation" led to the conclusion that § 1101(a)(13)(C) cannot be applied to criminal convictions that occurred before IIRIRA was enacted. *Id.* at 261.

In reaching this conclusion, *Vartelas* rejected the Second Circuit's view that IIRIRA could be applied to the alien retroactively because he "had not relied on the prior legal regime at the time he committed the disqualifying crime." *Id.* at 265. The Second Circuit reasoned that while the alien may have relied on pre-IIRIRA immigration law when he pleaded

guilty to a disqualifying offense, the alien cannot reasonably argue he relied on immigration law when he *committed* the offense, and § 1101(a)(13)(C)(v) provides that an alien is not treated as a returning LPR at the border if the alien has "*committed* an offense" identified in § 1182(a)(2). *Id.* at 272 (citing 8 U.S.C. § 1101(a)(13)(C)(v)) (emphasis added).

The Supreme Court rejected this analysis. It held that it was not necessary for the alien to prove reliance in order to invoke "the antiretroactivity principle," and "[i]n any event," the alien "likely relied on then-existing immigration law." *Id.* at 273–75. The Court reasoned that there is no "practical difference, *so far as retroactivity is concerned*" between committing an offense and being convicted of the offense. *Id.* at 275 (emphasis added). Rather, an LPR who committed an offense pre-IIRIRA would likely rely on the pre-IIRIRA right "to make trips of short duration" without "seeking an official's permission." *Id.* at 274. Moreover, in many cases the government will determine that the alien "committed an offense" for purposes of § 1101(a)(13)(C) by "check[ing] the alien's records for a conviction" at the border. *Id.* at 275. Therefore, for purposes of the Court's retroactivity analysis, an alien's reliance on pre-IIRIRA law for purposes of traveling abroad is substantially identical whether the alien committed or was convicted of an offense. *Vartelas* noted, in dicta, that "[t]he entire § 1101(a)(13)(C)(v) phrase 'committed an offense identified in section 1182(a)(2),' on straightforward reading, appears to advert to a lawful permanent resident who has been convicted of an offense under § 1182(a)(2) (or admits to one)." *Id.* at 275 n.11.[7]

---

[7] The Court's circumspect wording effectively acknowledges that the statutory language is ambiguous and susceptible to different interpretations. An alternative fair reading is that the reference to

Contrary to Vazquez-Romero's argument, this dicta does not conflict with *Valenzuela-Felix*'s determination regarding the timing of the government's obligation to prove that a returning LPR meets the exception set forth in § 1101(a)(13)(C)(v).

C

We next consider the BIA's determination that, at subsequent removal proceedings, the government may rely on a conviction obtained after a returning LPR is paroled into the United States but before the LPR is placed in removal proceedings. *Valenzuela Felix*, 26 I. & N. Dec. at 59–60.

Faced with the same question in *Munoz*, the Fifth Circuit held that the government properly relied on a subsequent conviction because, like Vazquez Romero, the LPR there "had already committed the act when she applied for reentry." 755 F.3d at 370. Like *Valenzuela-Felix*, *Munoz* found that this rule "makes good practical sense." *Id.* at 371. We agree. We therefore defer to the BIA and join the Fifth Circuit in holding that, to meet its burden of proving that a returning LPR is seeking an admission into the United States under § 1101(a)(13)(C), the government may rely on a conviction obtained after the LPR is paroled into the United States but before the LPR is placed in removal proceedings. *See Munoz*, 755 F.3d at 372; *cf. Ali v. Reno*, 22 F.3d 442, 448 n.3 (2d Cir. 1994); *Palmer v. INS*, 4 F.3d 482, 485 n.11 (7th Cir. 1993).

§ 1182(a)(2) incorporates the statute's classification of offenses, but not its requirement that the alien has been convicted.

IV

We now apply this framework to the facts of this case. When Vazquez Romero arrived at LAX, the CBP exercised its discretion to parole him into the United States for prosecution. As we have explained, we do not second-guess the CBP's decision to do so. Vazquez Romero then pleaded guilty to a crime involving moral turpitude. At subsequent removal proceedings, the government properly relied on Vazquez Romero's conviction to carry its burden of proving by clear and convincing evidence that Vazquez Romero could be regarded as an alien seeking an admission into the United States, pursuant to § 1101(a)(13)(C)(v).[8] Vazquez Romero was therefore properly subjected to a charge of inadmissibility.

**PETITION DENIED**.

---

[8] Vazquez Romero also argues that (1) petty theft under California Penal Code § 484 is not a crime involving moral turpitude and (2) the IJ denied him due process by denying his counsel's motion to withdraw. Those arguments were not raised before the BIA, and thus we lack jurisdiction to review them. *Barron v. Ashcroft*, 358 F.3d 674, 678 (9th Cir. 2004).